# Jackson v. The State.

## Embezzlement.

(Decided Dec. 21st, 1912. 57 South. 110.)

1. *Sales; Agency; Distinguished.*—Where goods are consigned to be sold and the consignee is at liberty to sell the goods at any price on any terms he pleases, paying the consignor a fixed price for the goods, the consignee is a vendee and not an agent, notwithstanding the contract provides the consignee is the agent of the consignor.

2. *Embezzlement; Agent.*—Where one purchased fertilizers on a credit executing his notes therefor, and sold it on a credit, taking notes therefor, which were pledged as collaterals for his own notes, and the fertilizer company permitted him to retain these notes for collection and remittance, he became the agent of the company for the collection of the notes, and might be guilty of embezzlement of the funds so collected.

3. *Same; Evidence.*—Great latitude being allowed in examination of a witness and in the introduction of evidence where fraud is involved, it was competent, in a prosecution for embezzlement, to introduce in evidence the contract between the parties whereby the defendant obtained the goods, although the contract did not create an agency, since an agency was in contemplation of the parties thereto.

4. *Trial; Objection to Evidence.*—Where any part of the evidence offered was competent, an objection to the evidence as a whole was properly overruled.

5. *Same; Argument of Counsel.*—It is the duty of the court, of its own motion to prevent improper argument of counsel, and to confine counsel to the legitimate field of discussion ,and hence it was not improper in the court to refuse to permit counsel to argue to the jury that if the defendant was convicted he would have to suffer imprisonment in the penitentiary from one to ten years.

APPEAL from Clarke Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

. [Jackson v. The State.]

Dudley Jackson was convicted of embezzlement, and appeals.   Affirmed.

The contract referred to in the opinion is as follows: "Tennessee Valley Fertilizer Company, Florence, Ala., 12/7/1908.   To D. B. Jackson, Fulton, Ala.—Dear Sir: I hereby offer to ship you, for Tennessee Valley Fertilizer Company, the following fertilizers on the terms and at the price hereinafter named: 30 tons, 10-2-2 at $20.94 per ton, 30 tons 12-2, at $16.94, per ton, or 30 tons, 14% at $14.69 per ton.   Upon delivery of the goods you are to give your note or notes for the purposes hereinafter named to cover the invoice price, payable to the order of the Tennessee Valley Fertilizer Company at Alabama Trust & Savings Bank, Florence, Ala., and to mature as follows: 1/3 Nov. 1, 1909; 1/3 Nov. 15, 1909; and 1/3 Dec. 1, 1909.   Deliveries to be made by us in car lots as you may direct on cars or boats at Florence, Ala., not later than May 1, freight prepaid to Fulton, Ala.   The goods are not to be shipped until so ordered by you; and our obligation to deliver may be canceled by the destruction of our works by fire or other providential causes, including accidents, labor strikes, or delays in transportation.   This contract is nontransferable, except by the written consent of both parties hereto.   You strictly agree not to sell or deliver our fertilizer to any person on credit without first taking note on the form to be furnished by us.   Notes or other obligations taken by you in settlement in part or whole for fertilizer shipped you under this contract shall not be pledged with any bank or other party without the written consent of this company.   On May 1, or sooner, if possible, you agree to deliver to us, or our order, notes of the planters or other purchasers to whom you may have sold these goods for the gross amount of the sales of the same to be held by us as collateral security for the

payment of your obligation to us. You are to give us a receipt for said collateral when same is returned to you for collection. All of said goods and all of customers' obligations therefor, as also all proceeds therefrom, are to be held in trust by you for us until your indebtedness to us is fully paid, and, further, all proceeds of said goods as collected must be first applied to the payment of your notes or obligations to us, whether the same have matured or not, such payments, however, to draw the legal rate of interest from the time of payment to the maturity of note. In case you fail to carry out any or all of the provisions and agreements in this contract, then the debt arising under this contract becomes at once due and payable, whether the same shall be closed by note or otherwise, and any and all goods, money, notes, and accounts you have received shall be considered to have been received by you as our agent, and we can demand immediate settlement of all transactions between us under this contract and as to the obligations herein contained you waive all right of exemption under the laws of Alabama or any other state, and you agree to pay all cost of collection, including a reasonable attorney's fee. It is further agreed that any and all goods shipped you in excess of the quantity herein mentioned, whether same goods or not, you are to receive subject to all conditions of this contract, unless otherwise provided for in writing, and you agree to handle our gools exclusively this season. It is further expressly agreed and understood that each and every car or shipment under this contract is distinct and separate from every other shipment, and in event of any misunderstanding arising about any shipment it shall apply only to shipments which are questioned, and each and every complaint, if any is made, shall be specific as to shipment and cause of complaint. We reserve the right to cancel this con-

[Jackson v. The State.]

tract, or any part thereof, in case of any occurrence which we regard as unfavorable to your credit. No verbal understanding will be recognized by either party hereto. This contract expresses all the terms and conditions agreed upon, and becomes binding when approved by the home office. (Signed by both parties.)" The letters referred to had reference to the signing of certain notes, the shipment of certain guano, and some have reference to the shortness of the crop and the fact that the defendant had not been able to make any collections. The argument of the counsel excluded was that the defendant would, if convicted, suffer imprisonment in the penitentiary for not less than one nor more than ten years. The other facts sufficiently appear in the opinion.

J. F. ALDRIDGE, and JESSE V. BOYLES, for appellant. No brief came to the Reporter.

R. C. BRICKELL, Attorney General, and WILLIAM L. MARTIN, Assistant Attorney General, for the State. The contract was properly admitted in evidence.—*Dillingham v. Brown,* 38 Ala. 311. If error it was cured by the defendant's testimony that he executed it.—Section 4006, Code 1907. The letters were properly admitted in evidence.—*White v. Tolliver,* 110 Ala. 300. The receipt was properly admitted.—*Willis v. State,* 134 Ala. 429. The court did not err in refusing to permit counsel to proceed with his argument as to punishment.— *Childress v. State,* 86 Ala. 77; *Springfield v. The State,* 96 Ala. 81. The defendant held the funds collected by him in trust under the contract, and was properly convicted of embezzlement.—*Pulliam v. The State,* 78 Ala. 31; *Grider v. State,* 133 Ala. 188.

DE GARFFENRIED, J.—The indictment charged that the defendant, "an agent of Tennesee Valley Fertilizer Company, a corporation, under the laws of the state of Alabama, embezzled, or fraudulently converted to his own use, money to about the amount of one hundred and seventy-five and no/100 dollars, which had come into his possession by virtue of his office or employment." He was convicted by a jury, and under the judgment of the court following the verdict was sentenced to the penitentiary. The defendant appeals.

1. We desire to state, at the outset of this opinion, that the conclusions to which we have arrived in upholding the judgment of the court below are not based upon the theory that the contract dated "Florence, Ala., 12/7/1908," which the reporter will set out in the summary of the facts of this case, and the letters subsequently written by the defendant, which were introduced in evidence, taken in connection with the further fact that the defendant bought fertilizer from the Tennessee Valley Fertilizer Company as contemplated, were sufficient to make out a prima facie case of agency against the defendant. "There is no magic in the word 'agency.' It is often used in commercial matters when the real relationship is that of vendor and purchaser." —Sir W. M. James, L. J., in *White v. Neville*, 6 L. R. Ch. Cases, 397. "Mr. Towle practically acknowledges in his cross-examination that the real bargain between them was this: That Neville was to pay Towle & Co. a fixed price at a fixed time, but he was not bound to sell to the customer at that price or at that time, but was left at liberty to make his own bargains. Both Towle & Co. and Mr. Neville may have thought that this did not prevent their relation being principal and agent; but in my opinion in point of law it certainly does."— Sir G. Mellish, L. J., in *White v. Neville, supra.* "These

[Jackson v. The State.]

were the defendant's own goods. What the act (against embezzlement) contemplated was the intrusting of goods to an *agent,* and I do not see how a vendee can be considered as an agent within the meaning of the act. I am pretty clear on this point. Has a vendee ever been held liable under this statute? The whole tenor of it points otherwise, and it seems to contemplate a direction coming from a vendor, or from the person who intrusts. The goods having been sold and the delivery orders given, the defendant became, *not an agent,* but the owner of the goods, and I therefore do not think the relations between the parties were at all such as were contemplated by the act."—*Ray v. Budin,* Cox's Crim. Cases, vol. 15, p. 412. A person to whom goods are consigned to be sold, and who is at liberty to sell them at any price and on any terms he pleases, he paying a fixed price to the owner, is not an agent, but a vendee.— *Gibney v. Curtis,* 61 Md. 192.

While the Supreme Court of the United States in *Dr. Miles Medical Co. v. Park & Sons Co.,* 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502, were dealing with the question as to whether certain contracts were void as being in restraint of trade and not on the identical subject now before us, the following is quoted in the opinion in that case with approval, and it furnishes us with an apt illustration of our views upon the present question: " 'If a man,' says Lord Coke, in Coke upon Littleton, § 360, 'be possessed of a horse or a chattel, real or personal, and give his whole interest or property therein, upon condition that the donee or vendee shall not alien the same, the same is void, because his whole interest and property is out of him, so he hath no possibility of reverter; and it is against trade and traffic and contracting between man and man.' " It would seem from the same reasoning that it is against "trade and traffic

and contracting between man and man" that the vendee of property, acquiring the whole interest in the property, can by a contract make himself the agent of the vendor as to the proceeds of the property if he sees proper to sell it. Imprisonment for debt is inconsistent with the humane spirit of the present age, and it seems to us that by this instrument the vendor, being unwilling to make the purchaser an agent, but making, in fact, an absolute sale, has undertaken, in advance, to provide criminal punishment for the mere nonpayment of a debt, if the property, the subject of the sale, should in fact be sold by the vendee before the payment of the debt. Adults should be allowed great freedom in making their contracts, but we doubt whether a vendor making an absolute sale of personal property on credit can by indirection provide a criminal remedy for the collection of the debt when due.

2. The defendant, it appears from the evidence, is a man of no property. He lives on land belonging to his wife, and conducts a mercantile business for his wife, or in his wife's name. It further appears that he bought two car loads of commercial fertilizer from the Tennessee Valley Fertilizer Company, and that the fertilizer was bought by him, and not his wife. It further appears that he sold some of the fertilizer for cash, but, we gather from the bill of exceptions, that most of it was sold to farmers in the neighborhood who gave notes for it payable in the fall. These notes were made payable to the Tennessee Valley Fertilizer Company, but as the fertilizer belonged to the defendant, and not to the fertilizer company, we attach but little, if any, importance to that fact. The notes when taken by him were for his fertilizer, and the notes so given by the farmers were his notes, no matter to whom he made them payable. When the defendant bought the fertilizer, he did not pay in

cash for it, but, after he had bought it and it had been
delivered to him, and after he had sold it as above stat-
ed and taken notes from the purchasers, he executed on
April 19th to the Tennessee Fertilizer Company his
three notes for an aggregate slum of $732.90, and in the
notes provided that "as collateral security to secure this
or any other debt I now or may owe said company I
hereby pledge all notes taken for Tennessee Fertilizer
Company fertilizers during the current season." Sub-
stantially all of the notes taken by the defendant from
his customers for the fertilizer sold them had been taken
when the above agreement was made, and the defendant
subsequently collected the money due on said notes, and,
instead of remitting the money to the fertilizer com-
pany, converted it to his own use. The notes above
pledged as collateral were not delivered by the de-
fendant to the fertilizer company when he executed
his notes to the company, but the defendant was allow-
ed to remain in possession of them, and it seems to us
that the above evidence shows that it was certainly in
effect agreed between the parties, when the defendant
executed his notes to the company, that the money due
by said notes transferred as collateral, when collected,
was to be the money, and in fact was the money, of the
fertilizer company, and that, when it was collected, the
defendant was to remit the money to said company. If
so, the defendant was the agent of the company for the
purpose of collecting the money, and, when the money
was collected, it was the company's money. The evi-
dence of one of the witnesses for the state, if believed,
clearly shows that this was the true situation. This
witness says: "I met the defendant in the town of
Dickson during that fall. He took out a roll of money
from his inside pocket and said: 'This is $150. This be-
longs to Tennessee Valley Fertilizer Company, but they

damn sure won't get it, for I am going to keep it myself.' "

3. The contract which we have instructed the reporter to set out in his summary of the facts of this case tends to show that at the inception of the transaction between the defendant and the fertilizer company an agency was within the ultimate scope of the contemplation of the parties when the fertilizer was sold to the defendant, and this letter or contract was therefore not irrelevant. Great latitude is allowed in the range of evidence when the question of fraud is involved. It is indispensible to truth and to a proper administration of justice that it should be so.—*Snodgrass v. Bank,* .25 Ala. 174, 60 Am. Dec. 505; *Reeves' Case,* 95 Ala. 32, 11 South. 158.

4. A number of letters written by the defendant to the fertilizer company were also offered in evidence. The defendant objected to their introduction as a whole. If part of an answer is admissible, an objection to the question as a whole may be overruled.—6 Mayfield's Dig. 371, § 701. For the reasons indicated in section 3 of this opinion, some of the letters written by the defendant and introduced in evidence were certainly admissible.

5. The court has the right ex mero motu, and it is, in fact, its duty, whenever counsel undertake to make an improper argument to a jury, to put an end to such argument, and to require counsel to confine their arguments within the range of legitimate discussion.—*Ridgell v. State,* 1 Ala. App. 94, 55 South. 327; *Du Bose v. Conner,* 1 Ala. App. 456, 55 South. 432. It is therefore evident that the court committed no error in refusing to allow the attorney for the defendant to transgress the bounds of legitimate argument.

There was, in our opinion, evidence in this case from which the jury were authorized to conclude that the de-

[Dungan v. The State.]

fendant, an agent of said fertilizer company, embezzled or fraudulently converted to his own use money exceeding in amount the sum of $25, which had come into his possession by virtue of his office or employment, and, as we find no error in the record, the judgment of the court below must be affirmed.

Affirmed.