# Stegall-Cheairs F. Co. *v.* Bethune Mule Co., et al.

### *Bill to Enforce Equitable Lien.*

(Decided February 13, 1913.  61 South. 274.)

1. *Liens; Equitable; Definition.*—The term "lien" is used to denote a charge or encumbrance on a thing, where there is neither a jus in re nor jus in rem, nor possession of the thing.

2. *Sales; Equitable Liens; Proceeds of Sale by Merchants.*—The contract examined and the facts stated, and it is held that the seller could not claim an equitable lien on the proceeds of the fertilizer sold by virtue of the contract of sale, as no lien existed on the fertilizer itself.

APPEAL from Henry Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by the Stegall-Cheairs Fertilizer Company against the Bethune Mule Company and others for an accounting and to declare a lien upon the proceeds of certain guano. Decree for respondents, and complainant appeals. Affirmed.

Exhibit C is as follows: "Abbeville, Ala., Dec. 27, 1910. This agreement between Stegall-Cheairs Fertilizer Company and Robert Newman, parties of the first part, and Bethune Mule Company, parties of the second part, witnesseth: Parties of the first part agree to sell, and do hereby sell, the said Bethune Mule Company all fertilizers which they will use during the season of 1911 at a price to be fixed later. The said parties of the first part agree to sell at a price as cheap as can be obtained by the said Bethune Mule Company from any other reputable manufacturer of fertilizer; it being understood that, in the event the said Bethune Mule Company should secure a price cheaper than the parties of the first part are unable or unwilling to meet,

then the said Bethune Mule Company will have the right to cancel this contract and to purchase elsewhere. It is further understood that the prices referred to apply only to written prices made by reputable manufacturers of fertilizer of equal analyses with the parties of the first part. Second. Settlement for fertilizer sold under this contract is to be made by May 1, 1911; the said Bethune Mule Company agreeing on that day to execute their notes payable November 1, 1911, for the net amount for all fertilizer sold, said notes to be made in equal amounts, one payable to Steagall-Cheairs Fertilizer Company, and the other to Robert Newman. Said Bethune Mule Company also agrees to deliver to parties of the first part, when called for, all cash, notes, accounts, or other proceeds for fertilizer sold, and further agrees to guarantee payment of same. Third. Parties of the first part agree to assist said Bethune Mule Company in the sale of its fertilizer, and not to come in competition, except in so far as is necessary to supply their local customers; and they further agree to sell the fertilizers as it will become necessary for them to furnish at a price to be agreed upon later, which will be satisfactory to both parties. Fourth. This contract applies only to such fertilizers as will be sold and delivered at Abbeville, Ala., and Murphy's Switch."

W. L. LEE, for appellant. Every valid agreement for a lien or a charge on property with the intention of creating a security for a debt that would exist without delivery of the property to the grantor, constitutes an equitable mortgage.—33 Ala. 534; 64 Ala. 357; 72 Ala. 294; 72 Ala. 392; 73 Ala. 155; 105 Ala. 533. Bethune, Capps and Newman were proper parties.—10 Cyc. 1341, et seq. The bill shows that the money, notes and mortgages taken for the guano have been converted and that

no call or demand for their delivery was necessary as it would have been a useless undertaking.—*Ensley L. Co. v. Lewis*, 121 Ala. 94; *Boutwell v. Parker*, 124 Ala. 341; *Haas v. Taylor*, 80 Ala. 459. Under the averments of the bill it cannot be said that Newman or the First National Bank had no notice or knowledge that the notes, cash, etc., received from the Bethune Mule Company, were not the property of complainant and said Newman.—82 Ala. 158; 70 Ala. 199; 99 Ala. 379; 135 Ala. 168; 12 Ala. 545; 10 Cyc. 1053. Under the allegations of the bill Newman could not claim protection that he did not receive enough money, notes, etc., to discharge the Bethune Mule Company's obligation to him, as he was a joint lien holder with complainant in all such notes and mortgages.—*Ashford v. Ashford*, 136 Ala. 631; *Sibley v. Alba*, 95 Ala. 191; *Russell v. Russell*, 62 Ala. 48. The contract was valid.—*W. U. T. Co. v. Chambless*, 122 Ala. 429; *Perryman v. Wolff*, 93 Ala. 290. On the general proposition of an equitable lien see, 25 Cyc. 670; 27 Cyc. 1141; 82 Ala. 607; 11 Ala. 977; 5 Ala. 740; 14 Ala. 702; 53 Ala. 237.

R. W. MILLER, and FOSTER, SAMFORD & CARROLL, for appellee. M. V. Capps and the Bethune Mule Company were improperly made parties.—14 Cyc. 310. The contract was neither a legal assignment nor a legal mortgage, nor did it amount to an equitable mortgage or assignment.—*Ala. State Bank v. Barnes*, 82 Ala. 619; s. c. 87 Ala. 170; *Burns v. Campbell*, 71 Ala. 288; *Paden v. Bellinger*, 87 Ala. 576; *Windham v. Steverson*, 156 Ala. 345; *C. & C. G. Co. v. M. & L.*, 121 Ala. 87; *Purcell v. Mather*, 35 Ala. 570; *Skipper v. Stokes*, 42 Ala. 255; *Shackelford v. Keyser*, 131 Ala. 227. An agreement to assign a debt or chose in action at some future time will not operate as an assignment thereof so as to vest

any present interest in the assignee.—2 Dec. Dig. sec. 73; 4 Cyc. 39, and authorities supra. The attempted assignment of part of the claim was void both in law and in equity when done without the consent of the debtor.—*Andrews v. Frierson,* 134 Ala. 626; *Hanchey v. Hurley,* 129 Ala. 307; *R. R. Co. v. Robertson,* 109 Ala. 296.

DE GRAFFENRIED, J.—The reporter will set out, in his report of this case, Exhibit C to the bill of complaint.

1. The equity of the complainant's bill cannot be supported unless the Steagall-Cheairs Fertilizer Company possesses an equitable lien upon one-half of the proceeds of fertilizers which were sold by said company and Robert Newman to the Bethune Mule Company under the above contract. We gather from the allegations of the bill of complaint that said fertilizer company and Robert Newman sold, as it was ordered by the Bethune Mule Company, fertilizers to said mule company, and said fertilizers so purchased by the said mule company were, in the usual course of its business as a merchant, sold, in various amounts, to various and sundry people, some of which was paid for in cash, for some of it notes were given, and some of it was charged by said mule company to its customers as items in their accounts with said mule company. The mule company executed to the fertilizer company notes for the amounts which it owed the fertilizer company for fertilizers so purchased and sold; but it did not deliver to the fertilizer company any cash, notes, accounts, or other proceeds received by it for the fertilizers sold by it to its customers. The bill fails to allege that the fertilizer company ever made any demand upon said mule company for such "cash, notes, accounts, or other proceeds."

Adults should be alllowed great freedom in making their contracts; but we are of the opinion that the fertilizer company does not possess a lien in equity upon the proceeds of the said fertilizer purchased by the mule company under said contract and sold by it to its customers.

In equity the term "lien" is used to denote a charge or incumbrance on a thing, where there is neither a jus in re nor jus ad rem, nor possession of the thing.— *Donald & Co. v. Hewitt*, 33 Ala. 534, 73 Am. Dec. 431.

The above definition is indeed broad, but it is not broad enough to cover the situation in this case. When the above contract was made, there was no fertilizer in the possession of the mule company which it had bought from the fertilizer company. When the fertilizer was bought by the mule company from the fertilizer company, the fertilizer was the mule company's fertilizer, and, with the knowledge of the fertilizer company, that fertilizer was bought by the mule company to sell to its various customers as a merchant. The mule company was certainly not the agent of the fertilizer company in the matter.—*Jackson v. State*, 2 Ala. App. 226, 57 South. 110.

It cannot be contended that the fertilizer company possessed a lien upon the fertilizer before it was sold by the mule company. The fertilizer, under the express letter of the contract, was, upon its delivery to the mule company, the absolute property of the mule company; and how we can be expected to declare, in favor of the complainant, a lien upon the proceeds of the fertilizer when it did not possess a lien upon the fertilizer at the time it was sold, before it was sold, or at any other time, we are unable to understand. There was no charge or incumbrance on the thing—i. e., the fertilizer before it was sold—and, this being true, there cannot be a charge

or incumbrance upon the proceeds. The proceeds simply stand in place of the fertilizer; and as the fertilizer, as between the fertilizer company and the mule company, was the absolute property of the mule company, so must the proceeds of the sale of the fertilizer be the absolute property of the mule company. When, as we have said, the mule company came into the possession of the fertilizer, it was within the contemplation of the parties that the mule company would sell the fertilizer to its various customers, nevertheless the question as to whether the fertilizer would be sold depended entirely upon the future. The proceeds of the sale of fertilizers were not in the hands of the mule company—the proceeds were not in existence—when the contract was made; and the contract discloses that, at that time, the fertilizer which the mule company was to sell was not then, or may not then have been, in existence.

It seems to us that this case falls clearly within the doctrine announced in *Shackelford v. Kiser Co.*, 131 Ala. 224, 31 South. 77. Were we to hold otherwise we would be confronted with the most anomalous situation. It would be possible, if the contention of the complainant is correct, for a merchant to own, absolutely, a large stock of goods, wares, and merchandise and yet, under contracts similar to the one now under consideration, a merchant in New York might have a lien upon the proceeds of all the shoes sold by him, a merchant in New Orleans might have a lien upon the proceeds of all the hats sold by him, a merchant in Chicago might have a lien upon the proceeds of all the gloves sold by him, and so on, ad infinitum. Such a situation could not, of course, exist in any community governed by enlightened laws. We do not deem it necessary to pursue this discussion further.

The.decree of the court below is affirmed.
Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ.,
concur.