# City of Tuscaloosa *v.* Hill.

### Street Improvement Assessment.

(Decided April 8, 1915.   69 South. 486.)

1. **Jury; Trial by; Facts.**—In a proceeding to test the validity of a street betterment assessment, the legislature may authorize a trial without a jury of an issue of fact, such as whether the property has been increased in value by such improvement.

2. **Municipal Corporations; Improvements; Assessment; Appeal.**—Under the provisions of sections 1389, and 1394, Code 1907, on an appeal from a municipal betterment assessment, the submission to a jury of the issues of

[City of Tuscaloosa v. Hill.]

fact, whether the property had been increased in value by the improvement was proper, for the "courts" referred to in these statutes are those constituted of the judge and jury.

3. **Trial; Argument of Counsel; Reading Law Reports.**—It is permissible for counsel in argument to read to the jury legal extracts from the published decision of the Supreme and Appellate Courts of the state pertinent, to questions involved in the case on trial, and containing correct exposition of the law applicable thereto; but it is improper for counsel to read in argument excerpts from an opinion in a previously reported case containing the statement of facts, and the result of a trial before the jury, and the objection made thereto before the reading should have been sustained.

4. **Municipal Corporations; Assessment; Improvement; Prospective Repairs.**—In a proceeding to test the validity of a betterment assessment, the testimony of a properly qualified witness as to how long it would be before repairs to the improvement would be necessary, was admissible.

5. **Same; Effect on Other Property.**—Testimony as to the effect of improvements in streets on property other than the property in controversy was wholly irrelevant to the issue, and inadmissible.

6. **Same.**—Evidence as to whether the property has been damaged or benefited by the betterment, should be confined to the value of the property before and its value after the improvement was made.

7. **Same.**—In such a proceeding a witness should not be allowed to state directly whether the property had been damaged or benefited, but should state the fact that the jury might determine that question.

8. **Same.**—Where no objection was made to the competency of a witness to testify to the value of the property before and after the improvement, and he testifies fully on that point, testimony as to the extent of his experience in the way of studying whether improved, paved, and well drained streets add to the value of property adjacent thereto, was immaterial and irrelevant.

9. **Witnesses; Contradiction; Predicate.**—Before testimony is admissible to show contradictory statements made by a witness, a predicate must be laid as to the time and place of the making of such alleged contradictory statement.

10. **Appeal and Error; Review; View of Premises by Jury.**—It was within the discretion of the trial court to permit the jury trying the case to view the premises, and not revisable in the absence of gross abuse.

11. **Municipal Corporations; Improvement Assessments; Verdict.**—Where there were two classes of betterment, one for laying a sidewalk and paving, and the other for sewer and drainage works, the fact that the evidence failed to show benefit to the property though but one class of the improvement did not authorize a general verdict for the property owner.

12. **Same; Instructions.**—The charge that under the law, the cost of the improvements involved in the suit should be borne by the city under whose direction they were made, except such portion as was reflected in the increased value of property, peculiarly benefited thereby, assumed that the assessment exceeded the increase of the value of the property, and was erroneous.

13. **Same; Increase.**—The increase in the fair market value of the property specially benefited by a ·public improvement which will support an assessment for the amount, is the increase in worth in dollars and cents.

[City of Tuscaloosa v. Hill.]

14. **Same; Basis.**—A municipal corporation cannot assess the cost of a public improvement, such as the paving of a street, against the adjacent property, unless the property is benefited by such improvement.

15. **Same.**—An assessment for the cost of street paving, or of a storm sewer, against abutting property in excess of its increase in value by the special benefit from the improvement cannot be sustained.

16. **Same; Instructions.**—A charge asserting that only that part of the increase in value of the owner's property resulting from the improvement could be charged against the property which resulted from the conferring of special benefits by the improvements, and only to the extent of the increase in market value resulting therefrom, and that the expense of the performance of the ordinary public duties of the municipality for the general good must be paid from the general fund of the municipality, or by means of a general taxation, and cannot be made the basis of assessment, was argumentative, and should have been refused.

17. **Same.**—In such a case a charge that the number of witnesses is not the proper criterion by which to weigh testimony, was argumentative, and should have been refused.

18. **Same; Benefit.**—Not benefit to the land alone, but benefit to the entire property, is the criterion to test the amount of enhanced value from public improvements justifying a municipal benefit assessment.

19. **Costs; Taxation; Remedy.**—Under section 3684, Code 1907, where costs are improperly taxed against one not liable to pay them, the proper way to raise the question is by motion to retax, and if the motion is denied, and it is desired to review the judgment of the court, then to reserve bill of exceptions and appeal.

20. **Appeal and Error; Moot Question; Costs.**—The reversal of the main judgment has the effect to annul the judgment for costs, thus rendering moot the question whether they were properly assessed.

21. **Municipal Corporation; Improvements; Special Benefits.**—Construing section 223, Constitution 1901, and section 1373, Code 1907, it is held that the special benefits are the increase in the market value of the property resulting from the improvements, and even if the improvements increase the value of all other property in the immediate locality, such generally enjoyed increase in value is not a part of the special increase in value of the assessed property, and not to be used as a basis in computing assessments.

(Thomas, J., dissents.)

APPEAL from Tuscaloosa County Court.

Heard before Hon. HENRY B. FOSTER.

(This cause was reviewed by the Supreme Court on certiorari to the Court of Appeals, and the writ denied with opinion, but holding contrary as to the giving of charge 5. See 194 Ala. 559, 69 South. 598.—Reporter.)

Assessment proceedings by the City of Tuscaloosa against Mrs. Alonzo Hill. Judgment for contestant, and the City appeals. Reversed and remanded.

[City of Tuscaloosa v. Hill.]

The facts sufficiently appear from the opinion. The following are the charges referred to in the opinion: (1) If the fair market value of the property of the contestant was not increased by laying the pavement in front of the same, then your verdict should be for the contestant.

(3) Under the law in Alabama, the cost of improvements involved in this suit should be borne by the municipality under whose direction they were made, except such portion of said cost as is reflected in the increased value of the property which was peculiarly benefited thereby.

(4) By increase in the fair market value is meant increase in worth in dollars and cents, and, if contestant's property has not been so increased, you cannot find for the city.

(5) Only such benefits may be assessed against the property of contestant as confer a special and peculiar benefit upon said property, and no part of the cost of said improvements may be assesed against her on account of the increase in the market value of such property resulting from a general benefit in common with the rest of the community conferred by such improvements.

(6) Only that part of the increase in market value of Mrs. Hill's property resulting from said improvements can be charged against said property which has resulted from the conferring of special benefit by the said improvements, and only to the extent of the increase in the market value resulting from these benefits, and that the expense of the performance of the ordinary public duties of the municipality for the general good must be defrayed from the general fund of the municipality, or by means of general taxation, and cannot be made the basis of legal or special assessments.

(7) The number of witnesses is not the proper criterion by which to weigh testimony.

(8) If Mrs. Hill's property was so located at the time that it needed no further drainage, then said property is not benefited by the construction of said storm drain, or sewer, and you must find for contestant.

(9) If you are reasonably satisfied from the evidence in this case that the property of Mrs. Hill involved in this case is not benefited at all by reason of the pavement described in the assessment, then you cannot assess any of the cost of said pavement against said property.

(10) The city of Tuscaloosa cannot under the law make an assessment for the cost of street paving against the abutting property owner in excess of the increased value of such property by reason of the specific benefit derived from such improvement.

(11) Same as 10, but applicable to storm sewer instead of pavement.

(12) By increase in value of such property by reason of the special benefits derived from such improvements it is meant that value expressed in dollars and cents which has been added to such property by reason of the special benefits derived from such improvements.

(13) Under the law no part of the cost of this street improvement can be assessed against Hill's property unless the money value of her land has been increased to some extent, and only that increased money value can be collected out of such land.

BROWN & WARD, and OLIVER, VERNER & RICE, for appellant. CLARKSON & MORISETTE, for appellee.

BROWN, J.—This is a proceeding by the appellant under the local improvement statutes authorizing municipalities to levy the costs of laying sidewalks, curbing, paving, and street drains, not in excess of special benefits reflected in the increased value, against the abutting and drained property.—Code, § 1359, et seq. The appellee appeared before the board of city commissioners and filed objections to the proposed assessment, as authorized by section 1381 of the Code, and her objections being overruled by the board, she appealed to the Tuscaloosa county court.—Code, §§ 1389, 1390.

The appellee insisted in the trial court: First, that the value of the property was not enhanced by the improvements, and no assessment at all should be allowed; and, second, that the assessment made was greater than the special benefits reflected in the increased value of the property, and therefore excessive. The appellant, on the other hand, insisted that the increased value of the property by reason of the improvements was equal to or more than the assessment. This presented an issue of fact which was submitted to the jury, and in this the appellant insists there was error.

(1, 2) While, no doubt, it is within legislative competency to authorize the trial of such issues in cases arising under the tax-

ing power to be determined by a court without a jury, without impinging constitutional provisions (Cooley on Taxation [3d Ed.] pp. 5155; Page & Jones on Taxation by Assessment, §§ 202, 1347; *Mayor and Aldermen of Birmingham v. Klein,* 89 Ala. 461, 7 South. 386, 8 L. R. A. 360; *Friend v. Barber,* 181 Ala. 324; *McQuillan's Mun. Corp.* §§ 2129, 2915), the question here presented does not involve the question and scope of legislative authority, but of legislative intent. In the absence of express provision in the statute requiring the court, without calling a jury, to try the issues of fact, the statute (Code, § 1394) is open to the construction that "the court" therein referred to is a court constituted of a judge and jury, and this view is strengthened by considering this section in the light of sections 1389 and 1390, authorizing appeals to only "the circuit court or any other court of like jurisdiction." The question is authoritatively settled in *City of Huntsville v. Pulley,* 187 Ala. 367, 65 South. 405, and the rulings of the trial court in accord with that case were correct.

(3) The practice of allowing counsel, in the argument of a cause to the jury, to read to the jury, in the presence of the court, as a part of their argument, extracts from the published decisions of the Supreme and Appellate courts of the state, when pertinent to the questions involved in the case on trial and containing correct expositions of the law applicable thereto, has been repeatedly approved, and from the repeated presentation of questions arising thereunder, as shown by the reported cases, we may assume has become the universal practice in this state.—*Stewart v. State,* 78 Ala. 436; *Cahaba Southern Mining Co. v. Pratt,* 146 Ala. 245, 40 South. 943; *Robinson v. State,* 155 Ala. 67, 45 South. 916. In the case last cited the court, in justifying the argument, said: It was not the assertion of any fact, but simply an argument based on hypothetical statement."

The practice of using in argument facts not in evidence or resting in legitimate inferences from the evidence has never been approved (*B. R., L. & P. Co. v. Drennen,* 175 Ala. 349, 57 South. 876, Ann. Cas. 1914C, 1037; *Wilhite v. Fricks,* 169 Ala. 76, 53 South. 157; *Jones v. State,* 170 Ala. 76, 54 South. 500; *Jackson v. State,* 2 Ala. App. 234, 57 South. 110, 7 Mayf. Dig. 57); and it can make no difference that the facts used in argument are contained in a reported decision of the Supreme Court and there stated as a basis for the pronouncement of that court in passing on the propriety of the ruling of the trial court refusing to dis-

[City of Tuscaloosa v. Hill.]

turb the verdict of a jury in a case involving similar facts and issues to the one on trial, when that pronouncement does not contain the statement of some proposition of law pertinent to the question pending before the jury.

In *Cross v. State*, 68 Ala. 476, the Supreme Court, in disposing of a question similar to the one here presented, said:

"In a single instance we think the presiding judge permitted counsel to transcend the legitimate boundary of discussion. In his closing argument the prosecuting attorney was allowed to state as facts what he alleged had occurred in the perpetration of another homicide having some alleged features analogous to those developed on this trial. Now, there was not only no evidence before the jury of that other homicide or its details, but such evidence, if offered, would have been illegal and irrelevant. This was not argument, and could furnish no safe or permsisible aid to the jury in considering and weighing the testimony before them. The jury in their deliberations should consider no facts save those given in evidence."

In *Wiliams v. State*, 83 Ala. 68, 3 South. 743, the court said:

"The court did not err in refusing to permit counsel, in the course of his argument, to read to the jury the facts as reported in *Brown v. State*, 46 Ala. 176. These facts were not in evidence, would not have been admissible, and could not have been properly considered by the jury. The inevitable effect of putting facts before the jury foreign and irrelevant to the case would have been to institute a comparison between such facts and the facts of the case on trial, and thus have diverted their attention to extraneous issues."

(4) The excerpts of the opinion in *City of Huntsville v. Pulley*, were specifically pointed out to the court before they were read as a part of the argument by opposing counsel, and the objection was overruled. The excerpts contained the statement of facts in another case, and the result of the trial before a jury, matters wholly incompetent and improper to be considered by the jury in the case on trial, and in them no principle of law was stated applicable to the issues on trial. The objection should have been sustained and the argument arrested by the trial court.—*B. R., L. & P. Co. v. Drennen, supra; Cross v. State,* 68 Ala. 476.

In view of the result of the trial and the conflicting evidence on the issues before the jury, it is apparent that injury resulted

from this error, and the judgment of the trial court must be reversed.

(5) The durability of the improvements made by the appellant the cost of which it was seeking to fix as a lien on appellee's property was pertinent to the issues before the jury, and there was no error in allowing the witness Kay, who had qualified as an expert engineer, to answer the question as to the time that would elapse before repairs in the work would be necessary.— *City of Huntsville v. Pulley, supra;* Page & Jones on Taxation by Assessment, §§ 922, 1271, 1272, 1313.

(6) The question as to the effect the improvements had on other property than that in controversy was wholly immaterial to the issues in the case, and the court did not err in sustaining the objection to the questions asked the witness Rosenau on cross-examination about the effect the improvements had on the value of property of a third person, or whether the assessment made against the property of such third person had been paid.

(7, 8) "Where the question is whether property has been either damaged or benefited, the proper form of inquiry, if specific, should be as to the value of the property before and after the damnifying or benefiting act has taken effect."—*City of Huntsville v. Pulley, supra; Town of Eutaw v. Botnick,* 150 Ala. 429, 43 South. 739. And the witness should not be allowed to state that the property has or has not been damaged or has or has not been benefited. This is a question for the jury.—*Gosdin v. Williams,* 151 Ala. 592, 44 South. 611; *Central of Georgia R. R. Co. v. Keyton,* 148 Ala. 675, 41 South. 918; *Atlanta & Birmingham R. R. Co. v. Brown,* 158 Ala. 607, 48 South. 73; *Sloss-Sheffield Steel & Iron Co. v. Mitchell,* 181 Ala. 576, 61 South. 937.

When these rules are applied, it is manifest that the court ruled correctly as to questions arising during the examination of the witness Yerby.

(9) No objection was made to the competency of the witness Denny to testify as to the value of the property before and after the improvement, and he was allowed to testify fully on this subject. Therefore his "idea as to the extent of his experience and observation in the way of studying the question as to whether or not improved paved streets and well-drained streets add to the value of property adjacent thereto or not" was wholly immaterial and irrelevant, and the court did not err in sustaining appellee's objection to the question seeking to prove the experience and observation of the witness.

[City of Tuscaloosa v. Hill.]

(10) While it appears from the record that the witness Rosenau was examined touching his conduct in inducing the commission to lay sidewalks and make street improvements, it does not show that a predicate was laid as to the time and place of such conversation, and, in the absence of such predicate, it was not error to sustain the objection to the question asked the witness Weatherford for the purpose of showing a contradictory statement made by Rosenau.

(11) Allowing the jury to view the premises was a matter within the discretion of the trial court, which, according to the great weight of authority, will not be reviewed on appeal in the absence of gross abuse.—*L. & N. R. R. Co. v. Wilson,* 162 Ala. 588, 50 South. 188; *Rodgers v. Hodge,* 83 S. C. 569, 65 S. E. 819, 18 Ann. Cas. 729; Page & Jones on Taxation by Assessment, §§ 922, 1322.

The evidence as to the benefits accruing to the property by reason of the improvements was conflicting, and, after a careful review thereof, and allowing all reasonable presumptions of the correctness of the verdict, we are not able to say that the preponderance of the evidence against it is so decided as to clearly convince us that it is wrong and unjust. The assignment of error, therefore, based on the refusal of a new trial, cannot be sustained.—*Cobb v. Malone,* 92 Ala. 635, 9 South. 738; *City of Huntsville v. Pulley, supra.*

(12) Two cases against appellee were tried together, one involving the assessment for laying the sidewalk and street paving, and the other for laying storm sewers and draining the property. Therefore it was error for the court to give charges authorizing a general verdict for the defendant on a failure of the evidence to show benefits to the property as to only one class of improvements. Charges 1, 8, and 14 were of this class, but the only branch of the case before us for review is that predicated on the paving assessment, and injury is not shown from the giving of those charges.

(13) Charge 3 invaded the province of the jury, and was erroneous in that it assumed that the assessment exceeded the increase in the value of the property.

(14-16) Charges 4, 9, 10, 11, and 12 were properly given.— *Duke v. City of Anniston,* 5 Ala. App. 348, 60 South. 447.

Charge 5 undertakes to draw a distinction between the increase in market value arising from general benefits and such

[City of Tuscaloosa v. Hill.]

increase in value arising from special benefits which is not recognized by the courts of this state. In the *Town of Eutaw v. Botnick* the Supreme Court observed: "Some of the cases draw the distinction between special benefits and general benefits, and others indicate that the line between the two is imaginary. However that may be, the general trend of the best authorities is that the simple question is whether or not, taking all into consideration, the property has deteriorated in value as the result of the work. * * * Of course, if it has increased in value, the owner has not been damaged; in other words, the test is the difference between the market value before and after the work done."—*Town of Eutaw v. Botnick*, 150 Ala. 434, 435, 43 South. 741; *Enterprise Lumber Co. v. Porter & Newton*, 155 Ala. 426, 46 South. 773; *Duke v. City of Anniston, supra*.

This charge was erroneous, and should have been refused.

For the errors pointed out, the judgment of the county court is reversed, and the cause remanded.

Reversed and remanded.

### ON REHEARING.

(20) There are two sufficient reasons for not considering the propriety of the order of the trial court taxing the costs against the property owner. The question was not properly presented. The cross-assignment of error is based on the following recital in the judgment-entry immediately following the order taxing the costs: "The defendant in open court then and there duly and legally excepted to the judgment of the court in thus taxing the costs against the defendant."

And after examination of the bill of exceptions we find nothing in it showing that such exception was reserved, and the recital in the judgment that an exception was reserved is unavailing.—*Dorough v. Harrington*, 148 Ala. 305, 42 South. 557; *Hoge v. Herzberg*, 141 Ala. 439, 37 South. 591.

Where costs are improperly taxed against one not liable to pay them, the proper practice is to raise the question by motion to retax the costs, and, if this motion is overruled, reserve a bill of exceptions and appeal.—Code, § 3684; *Stallworth v. State*, 129 Ala. 118, 30 South. 31.

(21) The second reason is that by the reversal of the judgment the judgment for costs was also annulled, and the question

presented by the cross-assignment of error became a moot question.—*Pulsifer v. McDaniel & Son,* 169 Ala. 644, 53 South. 772.

(22) Special or peculiar benefits, within the meaning of section 223 of the Constitution and of section 1373 of the Code, simply mean the increase in the market value of the property resulting from the improvements, and the fact that the improvements may have the effect to increase the value of all other property in the immediate locality does not change the result. The plain purpose of section 223 of the Constitution, which was suggested by the case of *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, is that the property shall not be taxed for such improvements materially in excess of the actual benefit resulting to the property from the improvements. In that case it is said: "Undoubtedly abutting owners may be subjected to special assessments to meet the expenses of opening public highways in front of their property; such assessments, according to well-established principles, resting upon the ground that special burdens may be imposed for special or peculiar benefits accruing from public improvements.   *   *   *   'The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay.' "

And in *City of Decatur v. Brock,* 170 Ala. 153, 54 South. 209: "The restriction placed by the Supreme Court of the United States upon the amount of the assessment, and with which our Constitution was intended to harmonize, was that it should not exceed the value of the improvement to the lot or parcel; in other words, the tax against the owner should be no greater than the benefits derived by him because of said extension or improvement. The Constitution or statute does not limit or restrict the assessment solely upon the amount of the increased value of lot or prevent an assessment on the whole lot ad valorem or by measurement, but simply restricts it so that it cannot exceed the value of the improvement of the property."

In *Duke v. City of Anniston,* 5 Ala. App. 350, 60 South. 447: "The criterion fixed by the people themselves for ascertaining the amount of such assessment is the increased value of the property, and, this being true, it is the duty of the courts to see to it

that the proper criterion is observed.  *  *  *  Under the plain mandate of the above constitutional provision, however, the cost of no street, sidewalk, or sewer improvement, and no part of the costs of any street, sidewalk, or sewer improvement, can be legally assessed by a municipality against abutting land which does not increase to some extent the money value of such land, and only that increased money value created by such improvement can be legally assesed against and collected out of such land."

In *Town of Eutaw v. Botnick,* 150 Ala. 434, 435, 43 South. 739, 741, an action for damages for injury caused by grading a street, it was said: "Some of the cases draw the distinction between special benefits and general benefits, and others indicate that the line between the two is imaginary.  However that may be, the general trend of the best authorities is that the simple question is whether or not, taking all things into consideration, the property has deteriorated in value, as the result of the work done.  *  *  *  Of course, if it has increased in value, the owner has not been damaged; in other words, the test is the difference between the market value before and after the work done.  As stated in the opinion of Judge Somerville in the *Maddox Case,* which was afterwards adopted as the rule by this court in the *Town of Avondale Case*: 'This rule has the advantage of being plain in meaning and of easy application in practice.'—*City Council of Montgomery v. Maddox,* 89 Ala. 181, 189, 7 South. 433; *Town of Avondale v. McFarland, et al.,* 101 Ala. 381, 383, 13 South. 509."

The doctrine was reaffirmed in *City of Huntsville v. Pulley,* 187 Ala. 367, 65 South. 405: "It may be conceded that, where the question is whether property has been either damaged or benefited, the proper form of inquiry, if specific, should be as to the value of the property before and after the damnifying or benefiting act has taken effect."

By this rule the scope of the issue and the evidence is well defined, and the inquiry limited to the difference in the market value of the property before and after the improvement, and, as heretofore stated in the cases quoted from, is "plain in meaning and easy of application in practice."  On the other hand, if the scope of the inquiry is extended to what increase in value is reflected in the parcel from general benefits enjoyed by all the property in the community and contradistinguished from that

[City of Tuscaloosa v. Hill.]

resulting from special benefits to the particular piece, the scope of the evidence must also be extended so as to embrace the value of every parcel or tract within the zone of benefits, no matter how remote, and submits to the jury a question that the courts, as shown by the opinion in the case of *Town of Eutaw v. Botnick,* have been unable to solve, and the solution of which is practically impossible.

Thus it is demonstrated that the difference of increased value from special benefits and general benefits is a mere theory that is impracticable of application to a concrete case, and that the utterances in the original opinion are sound and in accord with the holdings above referred to.

We repeat that charge 5, which referred to the jury the duty of separating the proportion of the increased value "resulting from general benefits in common with the rest of the community" from the increase in value resulting from peculiar or special benefits, is incorrect, and imposed on the jury the determination of an issue not in the case.

We have re-examined all the other questions presented, and find nothing to change our views.

The application for rehearing is therefore overruled.

Application overruled.

PELHAM, P. J., concurs.

THOMAS, J.— (Dissenting.)—I concur in the conclusion of reversal reached and in all that is held in the opinion, both originally and on rehearing, except as to that part which puts the trial court in error for giving charge 5 requested by defendant, and that part which upholds the trial court for sustaining objections to evidence as to the general increase in the value of property not abutting the improvements as a result of the improvements. I wish to dissent from that part of the holding of the court which is to the effect that, in the contemplation of section 223 of the Constitution, there is no difference between special and general benefits made by a municipality in laying sewers and paving streets and sidewalks adjacent to the property, or that, if there is any difference, it is not to be given effect or cannot be given effect.

Special benefits to the property abutting the improvements are such benefits as that property sustains as a result of the

improvements that are peculiar to it and other property abutting the improvements, and that are not in common with the benefits sustained by other property in the municipality as a result of the improvements; while general benefits are such benefits as the property abutting the improvements sustain as a result of the improvements that are in common with other property in the community—property not abutting the improvements. For instance, the paving of Perry street, in the city of Montgomery, confers a special benefit upon the property abutting thereon that is not conferred upon property not abutting thereon; but it cannot be said that such paving confers no benefit at all upon property not abutting thereon, for we know that Perry street is a highway open to the public, much frequented and used by the people of the city, and whose improvement must necessarily, therefore, add to the comfort, convenience, and pleasure of the city public at large, as well as peculiarly to the comfort, convenience, and pleasure of persons residing on that street, and to whom it is consequently more accessible than to those not residing on it. As a rule, whatever adds comfort and convenience to the holding, use, and enjoyment of property benefits that property by increasing its desirability, and consequently its market value. Hence we can well conceive that the paving and improvement of the highway of a city can increase the desirability and market value generally of property in the city, although such property does not abut on either of such highways so paved and improved.

The design of section 223 of the Constitution, in declaring that no city, town, or other municipality shall make any assessment for the costs of the construction of sidewalks, street paving, or sewers against abutting property "in excess of the increased value of such property by reason of special benefits derived from such improvements," was to establish a rule of simple justice—to make the abutting property owner pay towards the improvement, as is undoubtedly fair and right, an amount equal to, but not exceeding, the special benefits his property derived from the improvement as expressed in its increased value as a result of such special benefit, and not to require him to pay towards such improvement such part of the increased value of his property as resulted from the general benefit of the improvement, the benefit which property in general in the city received from the improvement. Whatever increase in value of the prop-

erty abutting the improvement is in common with property not abutting is a general, and not a special, benefit resulting from the improvement, and it would be unjust, the makers of the Constitution wisely thought, to subject such abutting property to an assessment for the improvement so large that it would cover such increase in value to the property resulting from the improvement as was enjoyed generally by other property, which did not abut the improvement; hence it was provided that such abutting property owners should not have to pay for any benefit that their property received from the improvement that was received in general by other property in the municipality, but only for such special benefit as resulted peculiarly to the property in question or to it and other abutting property—that is, for special benefits—leaving the municipality to pay out of the public funds, which are derived from the taxation of all property owners, whether their property abuts the improvement or not, whatever part of the cost of the improvement exceeded the special benefits derived to property abutting the improvement and as was represented in the increased value by reason of such special, not general, benefits. In this way the public, including the abutting property owners, by general assessment, are made to bear as taxpayers, as they should, the cost or expense of something which benefited all generally, and the abutting property owners, by special assessment, are made to bear exclusively that part of the costs or expense that benefited them specially and peculiarly.

The makers of the Constitution, it must be reasonably supposed, had some design in employing in the section of the Constitution (section 223) the word "special," when they said that the assessment against abutting property for the improvements should not be "in excess of the increased value of such property by reason of special benefits derived from such improvements;" otherwise why did they use the term "special?" If they meant by it, as the opinion here holds, both "special" and "general" benefits, it seems to me that they would have either used both of these adjectives, "special" and "general," or no adjective at all in connection with the word "benefits." Long before this section (223) was inserted in the Constitution courts had drawn the distinction between "special" and "general" benefits, and we must presume that the makers of the Constitution acted in the light of a knowledge of this distinction in drafting the section mentioned, and we must therefore, it seems to the writer, ascribe

to them some purpose for their act in using in the section the word "special," which the opinion fails to do.

In 10 Am. & Eng. Ency. Law (2d Ed.) p. 1176, wherein the author is dealing, not with the subject of assessments, with which we are here dealing, but with the subject of compensation in eminent domain proceedings, we find this text: " 'Especial benefits' are such benefits flowing from the proposed public work as appreciably enhance the value of the particular tract of land alleged to be benefited. 'General benefits' are the advantages of a general character which are derived by the country at large, or which are derived in common by landowners in the neighborhood of the improvement. They include such benefits as affect the whole community or neighborhood by increasing the facility of transportation, attracting population, enhancing the general property, and the like. * * * The authorities are agreed [speaking, as the author does, with reference to eminent domain proceedings] that mere general and public benefits, or such benefits as result from the improvement to the public at large, cannot be charged to the owner of land which is taken for public use."

Our own Supreme Court, in the case of *Eutaw v. Botnick,* 150 Ala. 434, 43 South. 741, cited in the original opinion, speaking to the same question as dealt with in the text above quoted (eminent domain proceeding), have said: "Some of the cases draw the distinction between 'special' benefits and 'general' benefits, and others indicate that the line between the two is imaginary."

The court recognizes, as seen, that a distinction has been drawn, and the writer does not doubt that the makers of the Constitution intended to recognize and make effective in the section of the Constitution under review on the subject now involved the distinction which the courts had previously drawn between the two classes of benefits—"special" and "general."

There is nothing, in the opinion of the writer, in the cases cited in the original opinion in this case and in the opinion on rehearing to conflict with this view. Some of them quoted from —notably *Eutaw v. Botnick*—are dealing with a different section of the Constitution from that here before us. Some, of course, are dealing with the same section as here concerns us, but not with the particular proposition, and hence the loose expressions used referred to in the opinions of the court here are not to be taken as authoritative on a question with which the court was not dealing when it used those expressions.