# Jackson v. The State.

*Indictment for Murder.*

52  305
131  84

1. *Declarations of the deceased; when not part of the res gestæ..*— Declarations or statements made by the deceased, in the absence of the prisoner, while walking to a church, at which he was killed that night, about fifteen minutes after his arrival, as to why he had not killed the prisoner in a difficulty which had occurred between them on the afternoon of the same day, are not admissible evidence against the prisoner on trial for the murder of the deceased.

2. *Illegal evidence; admission of; when fatal.* — Where illegal evidence has been admitted a reversal must follow unless the court can clearly see that the illegal evidence could not prejudice the defendant.

APPEAL from Circuit Court of Lauderdale.
Tried before Hon. W. B. WOOD.

[Jackson v. State.]

The appellant was indicted for the murder of Coleman Williams. On the trial the State offered to prove by Frances Moore, a witness who accompanied deceased to a church where he was killed in about fifteen minutes after his arrival, that in a conversation on the way, relative to a difficulty between deceased and prisoner on the evening of the same day, deceased said prisoner had insulted him and threatened to kill him, and on being asked why he did not kill deceased, replied that " he was unwilling to take away from him what he could not give." The court overruled an objection to this testimony, and the defendant duly excepted. It was further shown that on the occasion of the previous difficulty the deceased remarked that he was satisfied, but defendant replied : " D—n you ; I 'll kill you to-night, and that between sunrise and dark." The testimony does not show who was the aggressor in the fatal rencounter.

The admission of the conversation objected to is now urged as error.

O'Neal & O'Neal, with whom were C. H. Patton, J. B. Moore, and James Jackson, for appellant. — I. The conversation of the witness with the deceased constituted no part of the *res gestæ* and hence was inadmissible. 1 Phillipps on Evidence, 185, 4th Amer. ed. ; 1 Starkie on Evidence, 47 *et seq.*, 3d Amer. ed. ; 1 Greenleaf on Evidence 108, 12th edition ; *Chaney* v. *State*, 31 Ala. 342 ; *Commonwealth* v. *Harwood*, 4 Gray 41 ; *Tompkies et al.* v. *Reynolds*, 17 Ala. 109 ; *Kennedy* v. *Meador*, 1 Stew. & Porter, 220 ; *Gandy* v. *Humphries*, 35 Ala. 617. Declarations which relate to past transactions, not involving the main issue, are not admissible. *Spivey* v. *State*, 26 Ala. 9.

John W. A. Sanford, Attorney General, *contra*. — The conversation should have been admitted, as it was so near the time of the killing as to preclude the idea of deliberate design, and to render it practically contemporaneous with it, and constitutes part of the *res gestæ*. *Mitcheson* v. *State*, 11 Geo. 615 ; *Hadley* v. *Carter*, 8 N. H. 40 ; *Roulhac* v. *White*, 9 N. C. 63.

The conversation preceding the homicide contained sentiments that tended to show the character of the deceased. And this could be considered for the purpose of ascertaining the degree of criminality of the accused. *Fields* v. *State*, 47 Ala. 607.

MANNING, J. — In *Burns* v. *The State* (49 Ala. 370), it was held that evidence was admissible of declarations of de-

ceased made when leaving his home to go where he expected to meet and did meet his slayer, indicating a purpose to attack the latter, and to the effect — that when next heard from one or the other would be dead ; he having been killed in the en-counter that ensued shortly afterwards, without any witness to prove who was the aggressor. The declarations (say the court) " are admissible only to show the mental *status* of the deceased and his motive . . . . in inviting an interview with the prisoner. . . . . If there is no evidence of the facts attend-ing the killing, this evidence may enable the jury to determine who was the aggressor, and may properly generate a doubt of the guilt of the accused."

But it is to be observed in regard to this case, which resem-bles the cause before us, — that the declarations (first) related to a rencounter then sought and anticipated, in which the speaker who made them was slain ; and (secondly) that they were of such a nature as that if he had been the slayer, instead of the slain, they would have been evidence against him — to show malice. They were inculpatory, and, therefore, clearly not spoken to deceive.

In the present case, the remarks made by the slain not long before his death, in a conversation with a lady with whom he was walking to church, related to a rencounter that had taken place about an hour before. In reply to a question why he did not kill his adversary, he gave utterance to the manly and generous sentiment : " I was unwilling to take away from him what I could not give." If, however, in the contest that soon after followed, he had been the slayer instead of the slain, this reply would not have been admissible for his defence.

Declarations of a person accused of a crime, in his own be-half or to his own advantage, are allowable evidence for him only when a part of the *res gestæ*. If this were not so, under the rule allowing them, exculpatory declarations might be in-troduced, which a crafty man, seeking an opportunity to kill with impunity another to whom he was an enemy, might take occasion to make in order that they should be proved in his de-fence, to deceive the jury trying him.

The same principle which would prevent such declarations from being proved in defence of the person making them, if by his hand his adversary had fallen, prevents the introduction of them as evidence against his adversary, if he be the slayer. They may have been uttered for the very purpose of casting suspicion and blame upon the latter ; and his case ought not to be prejudiced by such testimony.

The evidence of the remark made by the deceased to the lady he was walking with was as unnecessary as inadmissible. It could not add any weight to the evidence already introduced

[Gordon v. State.]

of his pacific disposition and unwillingness to engage in a mortal contest. Yet we cannot know that the evidence did not materially affect the verdict of the jury; and the judgment must therefore be reversed, and the cause remanded.

The defendant must remain and be kept in custody until discharged by due course of law.