## JOHN VAILS v. THE STATE.

### No. 609.  Decided May 18, 1910.

#### 1.—Accomplice—Charge of Court—Practice—Question of Fact.

Where, upon trial of an accomplice of assault with intent to commit murder, two of his accomplices were used as State's witnesses, there was no error in the action of the court in submitting the issue of accomplice testimony to the jury to be passed upon by them as a fact. Following Zollicoffer v. State, 16 Texas Crim. App., 312, and other cases. Distinguishing Sessions v. State, 37 Texas Crim. Rep., 58; Armstrong v. State, 33 Texas Crim. Rep., 417.

**2.—Same—Charge of Court—Practice—Rule Stated.**

. In a proper case the court may direct the jury that the witnesses were accomplices, and it is the better practice when there is no conflict or question of fact, yet a failure to do so is not in itself cause for reversal.

**3.—Same—Charge of Court—Malice Aforethought.**

Upon trial of assault with intent to murder, where the indictment alleged that the defendant with his malice aforethought advised and encouraged his accomplice to take the life of the party injured and that he promised a reward and favor for so doing, it was not necessary in the court's charge to repeat the phrase "malice aforethought" in submitting the issue of promising reward and favor for killing the injured party; where the court had properly defined malice aforethought and applied it to the phase of defendant encouraging and advising the accomplice to kill the injured party.

**4.—Same—Accomplice—Corroboration—Insufficiency of Evidence.**

See opinion for facts held insufficient to corroborate the testimony of accomplices with that degree of certainty that would justify this court in permitting the verdict to stand.

Appeal from the District Court of Hopkins. Tried below before the Honorable R. L. Porter.

Appeal from a conviction of assault with intent to murder as an accomplice; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*Victor C. Phillips* and *Templeton, Craddock, Crosby & Dinsmore,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—Appellant was indicted, tried and convicted in the court below of being an accomplice to an assault with intent to murder and his punishment assessed at confinement in the penitentiary for eight years.

In the county of Hopkins on Saturday night, October 16, 1909, and at about 9 o'clock at night, while H. T. Jones was sitting in his house reading a newspaper, some one approached the window and fired upon him, wounding him in his face, breast and arms. The next morning one John Helms and Mrs. Bessie Jones, the wife of the injured party, were arrested for the shooting. John Helms plead guilty and was sent to the penitentiary for thirteen years. Mrs. Bessie Jones was tried, convicted and sent for eleven years. The appellant Vails was placed upon trial as an accomplice and the said John Helms and Mrs. Bessie Jones were used as State's witnesses. The appellant seeks reversal on the ground of errors committed by the court below in his charge to the jury and because of the insufficiency of the testimony in that the said Mrs. Bessie Jones and the witness Helms were not sufficiently corroborated.

It is earnestly insisted that it was error for the court to have directed the jury that if they found the witnesses Bessie Jones and

Helms were accomplices, or if they had a reasonable doubt thereof, then before they could convict their testimony must be corroborated. The contention here made is that the judge should have directed the jury .in terms that they were accomplices and that a conviction could not be had unless corroborated. Counsel have cited us to two authorities· that seem to hold that it is the proper practice to so charge the jury. One is the case of Sessions v. State, 37 Texas Crim. Rep., 58, and the other is Armstrong v. State, 33 Texas Crim. Rep., 417. Both of these opinions were rendered by Judge Hurt and both cases were reversed upon other grounds. The statement was made by Judge Hurt in the Sessions case that the proof shows beyond question that the witness Ferguson was an accomplice and the court should have instructed the jury to that effect. In the Armstrong case Judge Hurt says: "That Alexander was an accomplice is evident; that Waites was an accomplice in law is beyond any sort of question. This being the case, why should the court submit this issue to the jury? Why not tell the jury that they were accomplices? Why go to the trouble of defining what constitutes an accomplice? If there be an issue raised by the evidence whether a witness be an accomplice or not, in such a case the court should leave the issue to be decided by the jury under proper instructions." But as before stated, neither one of these cases was reversed because of the failure of the court to so instruct the jury, and we do not believe that a well considered case can be found where this court has reversed the case. because of the failure of the court to instruct the jury that certain witnesses are accomplices. In the Zollicoffer case, 16 Texas Crim. App., 312, this court, speaking through Judge Willson, says: "It is insisted by appellant that the court erred in submitting to the jury the question as to whether or not the witness Green was an accomplice; that the court should have directly charged the jury that he was an accomplice, the evidence being so conclusive. of that fact. Whilst it would not, under some facts, be improper for the court in its charge to assume and to instruct the jury that a witness is an accomplice, still we do not think it is error to submit the question to the jury. It has been the practice in such cases to submit this issue to the jury, and, believing the practice to be a safe and proper one, and in harmony with the spirit of our system of procedure, we are not disposed to change it." The doctrine laid down in the Zollicoffer case was approved in the case of Elizando v. State, 31 Texas Crim. Rep., 237. In the case of White v. State, reported in the 30 Texas Crim. Rep., 652, this court, speaking through Judge White, says: "The charge is objected to because it did not instruct the jury in so many words that the witness Powell was an accomplice. The charge submitted this question to the jury. . . . The court did not err in submitting this question to the jury for their determination." This rule seems to have been followed

by this court in the case of Hilton v. State, 41 Texas Crim. Rep., 190; Moore v. State, 47 Texas Crim. Rep., 410; Davis v. State, 55 Texas Crim. Rep., 495. We therefore hold that it is not reversible error for the court to submit the question as to whether the witness is an accomplice to the jury to be found by them as a fact. We are not to be understood as holding that in a proper case the court ought not to direct the jury that the witnesses were accomplices and it would be the better practice so to charge when there is no conflict or question.

The charge of the court is also objected to in that the court in applying the law to the evidence instructed them that if the defendant promised any reward or favor to the said John Helms to kill and murder the said Jones and was not present at the time, etc., in that the court should have directed them to the effect that they must believe beyond a reasonable doubt that the defendant promised a reward or favor to the said John Helms, with his malice aforethought, to kill and murder the said Jones, etc. The charge was as follows: "If, therefore, you believe from the evidence beyond a reasonable doubt, that John Helms, in Hopkins County, Texas, on or about the 16th day of October, 1909, with his malice aforethought, made an assault, with a deadly weapon, in and upon the persons of H. T. Jones, with the specific intent then and there on the part of him, the said John Helms, to kill and murder the said H. T. Jones; and if you further believe from the evidence beyond a reasonable doubt that the defendant, before the commission of said assault, if you find it was committed, to wit: on or about the 12th day of October, 1909, did unlawfully and wilfully and of his malice aforethought advise, or encourage the said John Helms to kill and murder the said H. T. Jones; or if you believe from the evidence beyond a reasonable doubt that the defendant promised any reward or favor to the said John Helms to kill and murder the said H. T. Jones, and if you further believe that the said John Vails was not present at the time said assault was committed by the said John Helms, if you find that it was so committed, then you will find defendant guilty as charged in the indictment and assess his punishment at confinement in the penitentiary for any period of time not less than two nor more than fifteen years, as the jury may determine. But if you believe that before the commission of said assault, if any, the defendant did not advise, encourage or promise any reward or favor to the said John Helms to kill and murder the said H. T. Jones, or if you have a reasonable doubt as to either of these issues, you will acquit the defendant." Now, an inspection of this charge shows that the court in submitting the issue to the jury stated "did unlawfully and wilfully and of his malice aforethought advise or encourage the said John Helms to kill and murder the said H. T. Jones." The error complained of is that the court did not direct the jury that the promise of the reward must have been with

malice aforethought to kill and murder, leaving out the phrase "malice aforethought." We think this objection is not well taken. The court had already defined malice aforethought. He had directed the jury that there could be no murder without malice. He had stated that if Helms had encouraged or advised defendant to kill, with malice aforethought. Why was it necessary for every sentence to have this repetition of malice aforethought? We do not think this was necessary. The bill of indictment alleged that he did with his malice aforethought advise and encourage the said John Helms to take the life of this party and did promise reward and favor for so doing. To promise reward and favor would be encouraging and advising a party to do the act. It was not necessary to repeat "malice aforethought" in submitting the issue of promising reward and favor for so doing. We have examined the charge carefully and we are of opinion that it is not subject to the criticisms made against it by appellant.

We are, however, of opinion that the testimony of the State's witnesses in this case is not corroborated with that degree of certainty that would justify this court in permitting the verdict to stand. H. T. Jones testified that in December, 1907, the appellant Vails hired him to work for him; that he lived with him as one of his family from that time until the 17th day of June, 1909; that appellant was a young man about twenty-five years of age. This witness said Vails told him that his home was in Oklahoma; that on the morning of the 17th of June, 1909, the witness got up before day, went into the kitchen, started a fire, put on the coffee and went to his barn to feed. After attending to his business at the barn he returned to the house, found Vails in his wife's room putting on his shoes; that he made some remark about Vails being in his wife's room; that witness told appellant that he would settle with him after breakfast and that he could leave, as he did not want him at his home any longer; that his wife spoke up and said she would leave too; that his wife did leave and carried with her the children. Witness' family consisted of a girl named Arline, 16 years of age, Robert, a boy, 14 years of age; Annie, a girl, 9 years of age, and the baby, about five years of age; that his wife took the children and went to his daughter's home; that she stayed with his daughter, who was married, a while and then moved to herself and stayed until the latter part of August, 1909, when, Jones says, he went for his wife and brought her and the children back home and that they lived together until the night of October 16, 1909, at which time he was shot, as before stated. He said that at the time he was shot he was carrying life insurance to the amount of $2,000; that John Helms came to his house on Thursday; that they went hunting on Saturday and on Saturday night he was shot; that the first time he ever saw Helms he came to the witness' house and as he understood was invited by Vails; that he was there

only one time and disappeared. As far as the record discloses Vails was never on the premises of Jones after the 18th day of June, 1909. Arline Jones testified that she was the daughter of H. T. Jones and that Bessie Jones was her mother; that she went with her mother when they separated; that they lived at a place called Brashear after the separation and that John Vails came to see her mother frequently while they lived there; that she heard Vails say that he did not like her papa and that he wished he was dead; that she heard him say that before her mamma and papa separated; that the only time she ever saw Helms, Vails brought him to their house; that on Tuesday evening before her father was shot on Saturday night, Helms appeared at her father's house and told her mamma in her presence that he had just come from Oklahoma; that he and John Vails had been up there together and that John Vails had sent him back down there to kill her papa. She further stated that he said that Vails told him to get the old man out hunting and kill him and claim it was an accident; that Vails told him that if he would kill her papa that he, Vails, would give him $250; that her mother asked where Vails got the money and he said Helms had told him that the $250 would come out of the old man's insurance money. She said on Thursday Helms got her papa out hunting; that he told the witness and her mamma that he was going to kill him that evening; that when they returned Helms told her mamma that the reason he didn't kill the old man was that he couldn't get him far enough away from the public road. On Saturday evening she says, Helms told her and her mamma that he was going to kill her papa that night; that after supper her papa went into the sitting room and went to reading a paper; that she saw Helms get her papa's gun and go out doors and that in a few minutes the gun fired and her papa holloed; that her papa left right away and said he was going to Silas Jones' for help; that when her papa left she and her mamma went out on the gallery and Helms came up to where they were and her mamma told him he had not hurt the old man much; that Helms handed the witness the gun after the shooting. John Helms testified that he had lived most of his life in Hunt County working for first one and then another. He says he got acquainted with Vails some time during the year 1909; that he went with Vails one Sunday afternoon to Jones' house and met his daughter Arline; that defendant and himself picked cotton in September in Collin County and that while in Collin County defendant made a proposition to him to kill Jones, and stated that if he would kill him he would get the widow and that witness could get the daughter Arline; that they would go to Oklahoma together; that the old man had $2,000 life insurance and that he, Vails, would give him $250; that Vails told him to go back to Jones' and get a job of work with him and get him out hunting and kill him; that he

agreed to do it; that after he agreed to do that he and defendant went to Durant, Oklahoma; that they there separated and that Vails went out in the country where he said he had some people living, and that three or four days thereafter witness went to where Vails was at work out in the woods with some other men cutting wood; that he and Vails had a short talk, when he informed Vails that he was ready to go back and do that work and that he asked Vails for some money; that Vails told him that he did not have any money but for him to go ahead and do the work and he would get $250 of the insurance money and he said that Vails told him to tell Mrs. Jones and Arline about it when he got there; he said he then left and came back, advised Mrs. Jones and Arline of his purpose and on the Saturday night named he carried it out by shooting Jones. Mrs. Bessie Jones testified about as Arline Jones did with regard to what Helms told her he was going to do and that Vails sent him to do it. She further testified that Vails had been criminally intimate with her while he was working for her husband and that the discovery by her husband caused her to leave and that she returned. She says that Vails never said a word against her husband to her or anything of the sort. Lelia Jones testified for the State that she was the daughter of H. T. and Bessie Jones and that she was married in July, 1908, and they lived about a quarter of a mile from her parents; that the defendant John Vails was living at her father's house at the time she married; that she had observed the attention of Vails towards her mother and that she had observed the conduct of her mother towards Vails, and that she had talked to her mother about this and that this occurred in July, 1908, before her marriage; that at one time when her father was sick, in July, 1908, she was in one room and her mother and Vails in another and she heard Vails state that he wished Jones would die and then he could get her and he asked her mamma if Jones were dead if she would marry him. She further said that on one Sunday after the separation of her father and mother, Vails came to her house to get some clothes he had there when she told him he had better stay away from her papa's house; that her papa had all he was going to stand and that he was liable to get hurt if he went back there; that Vails replied that he was not afraid of the old man; that he had a good gun and that it would shoot as good as her father's, and said he did not like her father any way. The appellant John Vails took the stand and admitted that he had been criminally intimate with Jones' wife; that he had not seen any of the Jones family since August, 1909; that he was in Oklahoma and heard of the shooting of Jones by some one and was informed that he was implicated in it. He says that when he got this information he immediately took the train and returned and was sitting at the depot at Greenville ready to take the train to Hopkins County when he was arrested;

he denied positively and vehemently that he had hired Helms or encouraged him in any way to kill Jones; that he had no desire to secure the death of Jones, etc.

This is substantially the testimony in the case. The statement that Helms made to Mrs. Jones and Arline that Vails had hired him to kill Jones was not corroborating evidence. No one had ever heard Vails say anything against Jones in closer connection to the killing than some fourteen or fifteen months before. In fact there is a want of corroboration in any particular. While it may be said that the criminal intimacy that had previously existed between Vails and Jones' wife might be regarded as a motive to want to have Jones put out of the way, yet motive for doing of an act can not of itself be considered as evidence corroborating the commission of crime standing alone. The fact that a man may have ill-will towards another or wish him harm and express his dislike in vigorous language ought not to put him at the mercy of a confessed criminal. This court is slow to reverse cases because of the insufficiency of the testimony. The verdict of a jury ought to receive great weight at the hands of this court and in a proper case their verdict will be upheld, but we do not think that the verdict of a jury has thrown around it such sanctity as to require this court to uphold it in the entire absence of testimony. Our duty and responsibility is as great as that of the trial court and when a proper case is presented to this court it is a duty that is imposed upon this court, in a case where the record discloses that there is a total absence of testimony to support the verdict of the jury, to set that verdict aside.

Being firmly of the opinion that the testimony of the accomplice in this case is not corroborated we have but to record our disapproval of the verdict and reverse and remand this cause. The judgment of the lower court is therefore reversed and the cause remanded.

*Reversed and remanded.*