# Ridgell *v.* The State.

## *Murder.*

(Decided April 20th, 1911. 55 South. 327.)

1. *Homicide; Evidence; Res Gestae.*—A conversation just previous to the difficulty between deceased and defendant, in which deceased accused defendant of being too intimate with his daughter and threatened to kill him was admissible as part of the res gestae, and as shedding light upon who was the aggressor.

2. *Same; Threats.*—Threats made by deceased to kill the defendant, made shortly before the difficulty and communicated to the defendant are admissible as throwing light on who was the aggressor, and on the question of whether defendant acted under a reasonable belief that it was necessary to kill in order to save his own life.

3. *Same; Evidence.*—Where it appeared in the evidence that the deceased had accused defendant with being too intimate with deceased's daughter, the age of the daughter was immaterial in a prosecution for the homicide.

4. *Trial; Argument of Counsel.*—If it be a fact that defendant had improper relation with a daughter of the deceased, this did not deprive him of the right of self-defense, or to claim freedom from fault, and a statement in argument by the solicitor that if defendant's conduct was improper and that was the cause of the killing, then the defendant cannot say that he was free from fault, was improper.

5. *Charge of Court; Argumentative.*—Charges intended only as answers to argument of counsel are properly refused.

6. *Appeal and Error; Harmless Error; Presumptions as to Effect.*—Where error is shown to have been committed in the admission of evidence, it is presumed, unless repelled by the record, that injury resulted to the party against whom such evidence was admitted.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Tom Ridgell was convicted of manslaughter and he appeals.   Reversed and remanded.

No counsel marked for appellant.

ROBERT C. BRICKELL, Attorney General, for appellee.

[Ridgell v. The State.]

DE GRAFFENRIED, J.—At the spring term, 1907, the appellant, Tom Ridgell, was indicted for murder in the first degree. The case was tried at the spring term, 1910. The defendant pleaded former acquittal as to murder in the first degree and in the second degree, and, the solicitor admitting the pleas, the defendant pleaded not guilty to manslaughter in the first or second degree, and the case was tried upon this plea. The evidence for the state tended to show that the defendant was guilty of manslaughter in the first degree; but the evidence for the defendant tended to show that the defendant killed the deceased, John McGee, in self-defense, The testimony without conflict showed that the deceased struck the first blow, knocking the defendant down with a whisky bottle, and that the deceased came to his death by a knife wound inflicted upon him by the defendant while the defendant was on the ground and deceased was on top of him.

The evidence, without conflict, also showed that deceased and defendant, just before the fatal difficulty, were in an altercation, and the evidence for the state tended to show that the altercation grew out of an accusation made by the deceased against the defendant being too familiar with a daughter of his; the testimony of the state as to the facts of the case being as follows: "Jim Holley testified that he knew the deceased, and the defendant, and that he lived in Samson, Ala., when the difficulty occurred. That he saw Ridgell and McGee that night standing on or about Broad street in the town of Samson, Geneva county, Ala., between the foundation of the stone building and a place occupied by Mrs. Morris. That the first thing that attracted his attention was that they were talking something about trouble between them and a daughter of Mr. McGee's, Georgia Mae. That he heard deceased accuse Tom

of being too familiar with her, and defendant was denying it, and they were talking the matter over and stopped on the sidewalk right in front of that stone building. That they had kinder stopped the arguing, and defendant said to Mr. McGee, 'Let's go and get supper,' and defendant walked off, and, after getting a few steps, McGee spoke to defendant, drawing his attention to what he had previously told defendant, and stated, 'Tom, be sure you bear in mind what I told you.' And Tom said, 'I will do as I dam please, if it is all right with her.' And McGee said, 'You will have to take that back, or I will bust this bottle on you.' That witness turned and went off, and was going east on Main street. That the parties were together when he went by there. That after he passed the corner he heard some licks, but that he was going east then, and they were on the other side, and that he saw them on the ground together. That while Ridgell was walking away, and before he stopped, and before the licks had passed, McGee said, speaking to Ridgell, 'Tom. you know you have been too familiar with her,' and Ridgell denied it, and Tom started off, and said he was going home, McGee told him to bear in mind what he had said. That he went down to the place next morning and saw evidence of blood and a broken bottle. That the daughter of McGee was married, and was a grass widow, her husband having left her, he (the husband) having a living wife when he married her. That McGee had a quart bottle in his hand. That he had just come from towards the dispensary, and it was Christmas Eve. That he heard the licks, but that it was dark, and he could not tell what was being done. That about that time he saw some person about 15 or 20 steps from there. During the altercation he heard the defendant appeal for help."

[Ridgell v. The State.]

We give the testimony of Jim Holley in full because he was the only witness who testified to the facts of the case on behalf of the state.

The conversation between deceased and defendant as testified to by Holley was, in reality, a part of the fatal difficulty, and as such was admissible as a part of the res gestae. The jury, if they believed this evidence of the witness, had a right to look to it, along with the other evidence in the case, in determining who was, in fact, the aggressor, the purpose of any act or demonstration of the deceased or of the defendant pending the difficulty, what, if any, danger the defendant reasonably believed himself to be in at the hands of the deceased at the time he struck the mortal blow, and whether, during the difficulty, the defendant said or did anything to provoke it, or whether, on the other hand, he manifested to the deceased a bona fide desire for peace and undertook to avoid the difficulty. For the above purposes the testimony of Holley as to the conversation between defendant and deceased was admissible, and for no other purpose.—Amer. & Eng. Ency. Law, vo. 24, p. 676.

During the progress of the trial, defendant offered evidence tending to show that shortly before the homicide the deceased had made threats to take his life, which threats were communicated to defendant; the threats being, in substance, that the defendant "would either have to leave the country, marry his daughter, or submit to being killed." These threats were admissible simply as threats, and the jury had the right to weigh this evidence along with the other evidence in the case in determining who was the aggressor, the qou animo of any act or demonstration of the deceased, and whether the fatal act was done under the reasonable and honest conviction of the defendant that it was then and there

7—CA

necessary to save the defendant from the loss of his life or from great bodily harm, and the jury had no right to consider this evidence for any other purpose. —*Roberts v. State,* 68 Ala. 156; *De Arman v. State,* 71 Ala. 351.

While the witnesses for the defendant were being examined, the solicitor was permitted, against the objection of the defendant, to ask one of the defendant's witnesses, on cross-examination, the following question, "At this time, how old was Georgia Mae, the daughter of McGee?" and the witness, answering, said that he did not know.

Another witness for the defendant, Kiah Smith, on his cross-examination, was asked by the solicitor, referring to the date of the homicide, the following question: "How old was the daughter, Georgia Mae?" The defendant seasonably objected to this question upon the ground that the evidence sought was irrelevant and immaterial; but the witness was permitted to answer the question, and stated that she was 20 or 25 years of age, and the defendant moved to exclude this answer of the witness on the above grounds; but the court overruled the motion, and the defendant excepted. The solicitor was then permitted, against the seasonable objection of the defendant, to ask the witness the following question, "Don't you know that she was not over 17 years old?" and the witness, in answer to the question, stated that he did not know that she was not over 17 years old. The solicitor was then permitted, against the seasonable objection of the defendant, to ask the witness the following question, "You say your opinion is that Georgia Mae was 20 or 25 years old?" and the court permitted the witness to answer the question, and the witness answered the same in the affirmative.

The bill of exceptions further shows that "the solicitor in his argument to the jury made mention of the fact of the attention of Ridgell to the daughter of the deceased, and that his conduct was improper, and that such conduct was the cause of the difficulty, and that defendant could not, on that account, say that he was free from fault."

The bill of exceptions further shows that in reply to this argument, and after the oral charge of the court had been delivered, the defendant requested the court in writing to give the following special charge: "(3) 'The court charges the jury that there was no evidence in this case that Ridgell and the daughter of McGee had been guilty of improper conduct, and the jury cannot consider any fact not in the evidence.' " The court refused to give this charge, to which action of the court the defendant then and there reserved an exception.

It is clear that, if improper relations existed between Georgia Mae and the defendant such fact alone would not have deprived the defendant of his right to claim freedom from fault in bringing on the difficulty, and it is manifest that the above-quoted statement of the solicitor in his argument to the jury on the trial of this case was illegal and improper.—*Cotton v. State* (Miss.) 17 South. 372. The court without impropriety might have, of its own motion, excluded those remarks from the jury; but they were made without objection on the part of the defendant, and no exception was reserved to them.

With reference to charge 3, it is sufficient for us to say that the confessed purpose of the charge was to reply to the above-quoted remarks of the solicitor in closing the argument for the state, and it is not error for a court to refuse a charge having no purpose other than to respond to or offset arguments made before the

jury by the prosecuting officer.—*Barnes v. State*, 134 Ala. 36, 32 South. 670; *White v. State*, 133 Ala. 122, 32 South. 139; *Mitchell v. State*, 129 Ala. 23, 30 South. 348.

We have stated above why the statements appearing in the testimony with reference to the woman Georgia Mae were admissible and it certainly cannot be argued that the *age* of Georgia Mae could in any way have been the subject of legitimate inquiry by the jury. The court plainly committed an error when it permitted the solicitor to ask the witness Smith how old she was at the time of the homicide, and in permitting the witness to answer the question. It will be noticed that, immediately after this question had been answered, the solicitor was again permitted, against the objection of the defendant, to ask this same witness if he did not know that the woman was not over 17 years of age, and immediately thereafter the solicitor was again allowed to say to the witness, against the defendant's objection, "You say your opinion is that Georgia Mae was 20 or 25 years old?" These questions of the solicitor, and the above-quoted statement from his argument, all show that the state studiously undertook, during this entire trial, to keep before the jury, as a matter of material inquiry in the case, the alleged relations of the defendant with the woman Georgia Mae. The only true issues under the pleadings and facts in the case were whether the defendant was free from fault in bringing on the difficulty, and, if so, at the time he struck the mortal blow, he was impelled to do so under a reasonable and well-founded belief, begotten by attendant circumstances, that it was necessary to do so to save his own life or to protect himself from great present and imminent bodily harm at the hands of the defendant, and that there existed no reasonable mode of escape

[Ridgell v. The State.]

without increasing his peril; and the age or personality of Georgia Mae, who was not a witness, and who, so far as the record discloses, knew no fact material to the cause, was absolutely immaterial and could not possibly have shed any light upon these issues. The reasoning in the case of *Dabney v. State,* 113 Ala. 38, 21 South. 211, 59 Am. St. Rep. 92, has no application to the present case.

We are not able to say that the court did not prejudice the case against the defendant by permitting the witness Kiah Smith to testify to the age of the daughter of the deceased. Certainly, if that testimony had any tendancy whatever, its tendency was plainly prejudicial to the defendant. It kept the woman Georgia Mae and her alleged improper intimacy with the defendant prominently before the jury as one of the issues to be passed upon by them, and colored, or was intended to color, the true legitimate subject of inquiry in the case.

We realize how difficult it is, in the hurry and excitement attending many of the trials in the courts of nisi prius, for the court to avoid error; but the rule that, where error is shown to have been committed in the admission of evidence before a jury, injury to the party against whom such evidence is admitted is presumed, unless such presumption is repelled by the record, is inexorable.—*Birmingham Ry., Light & Power Co. v. Beck,* Infra, 55 South. 28, decided at the present term by the Court of Appeals; *Bolton v. Cuthbert, et al.,* 132 Ala. 403, 31 South. 358, 90 Am. St. Rep. 914.

For the error above pointed out, this case is reversed and remanded.