173 So. 632

## SLAYTON v. STATE.
### 6 Div. 847.

Court of Appeals of Alabama.
Feb. 18, 1936.

Rehearing Denied April 14, 1936.

Reversed after Mandate Nov. 3, 1936.

Rehearing Denied Dec. 15, 1936.

Affirmed on Mandate April 6, 1937.

424

A. A. Carmichael, Atty. Gen., and Geo. Lewis Bailes, Sol., and Robt. G. Tate, Deputy Sol., both of Birmingham, for the State.

Horace C. Wilkinson, of Birmingham, for appellant.

SAMFORD, Judge.

The defendant and his wife were lying in their bed, in an upper room of their house in Birmingham, on a night when there was no moon, with the lights all out and the room perfectly dark, when a negro by the name of Joe Percy Bragg went into the house through a rear screen door, went up the stairs to a hallway and through a doorway entering into the room where defendant and his wife were sleeping, fired two shots from a pistol, one of which struck defendant's wife in the head near the eye and the

other in her breast. The wife made an outcry and fell or jumped across defendant, who jumped up and gave an alarm. In about five minutes other parties came in and an investigation followed.

The negro, Bragg, was arrested and placed in jail. He knew both defendant and his wife and was familiar with the premises, having worked around the house doing odd jobs both for defendant and his wife. When Bragg was first arrested, he made a confession to Officer Giles in which he stated that he did not intend to hurt Mrs. Slayton (defendant's wife); that he went out there to kill Mr. Slayton (defendant), because he hated him. Afterwards Bragg made another statement giving in detail his movements on the night of the shooting and in this last statement he stated that defendant had instigated the crime in order to get rid of his wife, because she had been "giving me the devil about running around." Bragg also stated that defendant threatened him if he did not "bump" his wife off and that if and when he did, he would take him out of Birmingham and to New Mexico as his chauffeur. He also said that defendant fixed the time at which the crime was to be committed and told him that he, defendant, would be lying on the left-hand side of the bed, with one foot out from under the cover. Bragg further testified that defendant on the Sunday before the crime paid him three $10 bills and on Friday before, $18, of which last he had borrowed $10 from a grocery man by the name of Plan.

The story told by Bragg is weird, unnatural, and is not easily understandable, and is the statement of an acknowledged accomplice, which under our statute, changing the common-law rule, must be corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient. Code 1923, § 5635.

Whether there is sufficient corroboration to admit a consideration of the testimony of Bragg is a question of law to be determined by the court, then the weight and sufficiency of such evidence is for the jury, and if they are convinced of its truth beyond a reasonable doubt, they may act upon it and convict. Smith v. State, 230 Ala. 413, 161 So. 538.

The only motive for Bragg to have committed the crime disclosed by the testimony of Bragg himself was the reward claimed to have been paid by defendant and the hope of a trip to New Mexico and the hope of future employment as a chauffeur. So far as a motive is concerned, it does not affect Bragg in any prosecution against him except as a matter of evidence. But it is a material fact, which, if corroborated by evidence tending to connect defendant with the instigation of the crime, would tend to corroborate Bragg's testimony to that extent.

Under our decisions and the construction placed upon section 5635, supra, corroboration means to strengthen, not necessarily the proof of any particular fact to which an accomplice has testified, but the probative, criminating force of his testimony. Bradley v. State, 19 Ala.App. 578, 99 So. 321.

In the case of Cobb v. State, 20 Ala. App. 3, 100 So. 463, 464, this court said: "Wilson [the accomplice and party hired to burn a storehouse] testified that defendant employed him, at the price of $50, to burn the store, telling witness to meet him * * * behind the buildings on the night of the fire. When the two met according to agreement, a little after 12 o'clock, defendant told witness he was going back to the house and would come back in his car and unlock the store and gas tank and 'leave a bucket setting there.' Defendant also said he would come without lights. Witness then testified:

" 'In a little bit the car come down like he said it was coming drove up there to the store over there. The car didn't have any lights on it as it come down. * * * It stopped out near the gas tank in front of the store. I know it was done the way he said he would do. * * * The gas tank was unlocked and the door was unlocked and a bucket sitting there. I saw somebody get out.'

"In connection with the fact that defendant was one of the active managers of the store and had access thereto, the testimony of J. A. Lewis, that 'Around midnight, just before I started home, there was a car drove up in front of Cobb & Cobb's store. There was a person in that car. * * * I think it was a Dodge car. * * * I noticed only the lights were out when it drove up, and it went away with the lights out. When the person got out there, he stopped at the tank, or made a racket at the tank like he was filling the car and left the car sitting at the tank and went in the store on the further side, and

stayed in the store 10 or 15 minutes, and come out and got in the car and drove off with the lights off until he got about even with the Key place and turned them on'—was sufficient corroboration of the testimony of the witness Wilson to authorize its submission to the jury."

To the same import are the decisions in Horn v. State, 15 Ala.App. 213, 72 So. 768; Segars v. State, 19 Ala.App. 407, 97 So. 747; Harris v. State, 21 Ala.App. 67, 105 So. 389.

This corroborative evidence may be by the proof of circumstances tending to prove the truth of material features of the testimony of the accomplice and is not confined, in whole or in part, to what is termed positive evidence. Newsum v. State, 10 Ala. App. 124, 65 So. 87.

■ As preliminary to the consideration of the testimony of an accomplice, the jury is required to believe or find beyond a reasonable doubt that the evidence of corroboration is true, and that it tends to connect defendant with the commission of the crime charged. After reaching such conclusion beyond a reasonable doubt, they may then go further and consider the whole testimony and convict if they find the defendant guilty beyond a reasonable doubt. Cobb v. State, 20 Ala.App. 3, 100 So. 463, certiorari denied 211 Ala. 320, 100 So. 466.

■ It is the law that motive alone on the part of defendant to commit the crime with which he is charged is not sufficient corroboration. But motive is a material, although not a necessary, inquiry in every criminal prosecution, and when coupled with other facts tending to corroborate the testimony of the accomplice becomes very important in cases similar to the one at bar.

■ Assuming that the liaison between defendant and Billie Teachworth, and defendant's expressed infatuation for her, furnishes evidence from which may be inferred a motive on the part of defendant for the crime charged, motive, even when proven beyond a reasonable doubt, is not sufficient corroboration to authorize the conviction on the otherwise uncorroborated testimony of an accomplice. People v. Becker, 210 N.Y. 274, 104 N.E. 396; Vails v. State, 59 Tex.Cr.R. 340, 128 S.W. 1117.

There are some facts and circumstances corroboratory of Bragg's testimony that he was the person who committed the crime, but this is not sufficient to support a con-

viction in this case. The facts tending to connect this defendant with the instigation of the crime must be independent of the testimony of Bragg, the accomplice. Lotz v. State, 23 Ala.App. 496, 129 So. 305.

Having the foregoing rules in mind, and eliminating, then, the motive as a point of sufficient corroboration, and laying aside, for the time being, the testimony of Bragg, we do not find any testimony in this record tending to connect this defendant with the instigation of the crime charged, as required by the statute; in the absence of which, the testimony of the accomplice cannot be considered.

However strong may be our inclination to analyze the testimony of Bragg (the accomplice), we refrain from doing so, for the very good reason that, under the foregoing, his evidence should not have been submitted to the jury for its consideration.

■ The evidence tending to prove the illicit relations between defendant and the Teachworth girl together with the letters written by defendant to her, were all admissible on the question of motive.

■ The court, in charging the jury as to the constituent parts of murder, instructed them as follows: "Murder in the first degree is the killing by one human being of another being, deliberately, premeditatedly and with malice aforethought, etc. * * .* Murder in the second degree is defined just as murder in the first degree, with the exception that deliberation and premeditation need not be present, etc." In this charge, the court fell into error. It is not every homicide committed deliberately, premeditatedly, and with malice that is murder. The homicide must, in addition, have been done unlawfully. Hornsby v. State, 16 Ala.App. 89, 75 So. 637; 29 Corpus Juris, 1083, § 59, note 39. The definition as given by the court may have been an inadvertence, but nonetheless it was error. However, it was such an error, as under the facts in this case, could not have affected the substantial rights of defendant.

For the error indicated in the foregoing opinion, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

### On Rehearing.

■ The state on application for rehearing insists that the fact that defendant on Wednesday night, after his wife was shot

by the negro, Bragg, at 1 a. m. Saturday morning, went to Arkansas to see the Teachworth girl, where he had a conversation with her for 30 minutes about 2:30 a. m. Thursday, in which conversation, the Teachworth girl asked defendant to bring her back to Birmingham and he refused, saying: "No he didn't want me to come back here, it was a disgrace to come back here, it would just cause embarrassment." And, further: "He did not tell me what to tell them (the police) in case they did come out there. He said they might come out there and if I didn't want to come back not to come back. He said to tell them nothing. Of course, I didn't know anything to tell," is sufficient corroboration of the testimony of Bragg, the accomplice, upon which to base a conviction. Our own case of Crumbley v. State, 26 Ala.App. 24, 152 So. 55, is cited to sustain this contention. The Crumbley Case, supra, states the law of that case under a state of facts, which could not be reconciled consistent with defendant's innocence, and which pointed strongly to a consciousness of guilt on the part of defendant, of the crime with which he was charged. In the instant case, the visit to the Teachworth girl on Wednesday after the crime committed on Friday night before and after defendant had been investigated and discharged by the authorities, being but a circumstance tending to prove an intimacy between her and defendant, could be reconciled consistent with the entire innocence of defendant of the crime with which he was afterwards charged. Where this is so, it is too well settled to admit of argument or to need the citation of authorities, it becomes the duty of the court and jury in a criminal case to so reconcile the evidence and to hold the defendant blameless. Tatum v. State, 20 Ala.App. 24, 100 So. 569; Hand v. State, 26 Ala.App. 317, 159 So. 275; Overby v. State, 24 Ala.App. 254, 133 So. 915.

■ The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused, which will strengthen or make stronger the probative criminating force of the testimony and is not sufficient where it is equivocal or uncertain in its character. It must be such that legitimately tends to connect the defendant with the crime and of a material nature. 2 Wharton's Criminal Evidence, § 747; Roath v. State, 185 Ark. 1039, 50 S.W.(2d) 985. Such corroborative evidence must tend to connect the defendant with the commission of the crime charged; it must be of a substantive character and must be inconsistent with the innocence of the accused. People v. Kempley, 205 Cal. 441, 271 P. 478; State v. Jones, 95 Mont. 317, 26 P.(2d) 341, 343; State v. Laris, 78 Utah, 183, 2 P.(2d) 243, 246. In the Jones Case, supra, it was said: "Where the facts and circumstances relied upon for corroboration are as consistent with innocence as with guilt, a conviction on the testimony of an alleged accomplice must be set aside." And in the Laris Case, supra, after quoting the statute similar to ours, the Court said: "It must in and of itself tend to implicate and connect the accused with the commission of the crime charged, and not be consistent with his innocence." After reviewing a large number of cases, Mr. Wharton in his work on Criminal Evidence, vol. 2, par. 752, concludes: "The proper test in determining whether there has been sufficient corroboration of the testimony of an accomplice, according to statutory requirements, is first to eliminate the evidence of the accomplice, and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration." Otherwise, it follows there would not be. It is also held on good authority that corroboration that merely raises a suspicion of guilt is not sufficient. 2 Wharton's Criminal Evidence, par. 753.

■ The fact that defendant was having illicit relations with the Teachworth girl, while he was living with his wife and family, might quite naturally cause him to want her to stay away from Birmingham at a time when her presence there might bring to the wife knowledge of the relationship, and, as he said, to his embarrassment and disgrace, but it does not furnish substantive evidence of an assault to murder by this defendant on the wife.

The opinion is extended, and the application is overruled.

RICE, Judge (dissenting).

The judgment is reversed on the single ground that the testimony of Joe Percy Bragg is not corroborated in the way requisite to conviction. Code § 5635.

Upon consideration I cannot agree.

As I read the testimony—for the first time on this application for rehearing—there appear at least two circumstances, or bits of testimony, that seem to me to

meet all the requirements of the statute as to the corroboration requisite for a submission of the case to the jury.

I shall set out and discuss but one,—because, forsooth, if I am in error about this one, I would be in error about the other—the one discussed being the strongest, as I see it, of the two ; and if I am correct, as I believe I am, about the one discussed, my associates grievously err in reversing the judgment of conviction on the ground stated in the original opinion.

· The crime was committed some time after midnight, on Saturday morning. On the following Wednesday, appellant turned up at El Dorado, Ark., some 480 miles from Birmingham, where he called upon Billie Teachworth at 2 a. m., remaining for only a few minutes.

Billie Teachworth testified that at the time appellant called upon her as aforesaid, she had already heard of his wife's having been shot. She says he told her at that time and place, and under those circumstances, that "he didn't want me (her) to come back here (Birmingham), it would just cause embarrassment"; that police officers might come out there (El Dorado), and that if she "didn't want to come back, not to come back" (meaning to Birmingham). She said he told her, further, with reference to these Birmingham police officers, *"to tell them nothing."* (Italics mine.) This testimony of Billie Teachworth is completely ignored, in the majority opinion.

Counsel for appellant (not so indifferent) says, in disposing of the testimony of Billie Teachworth, which we have quoted and narrated above, "This appellant doubtless realized that when an assault had been made upon his wife, in scurrying around for the perpetrator of the assault, his relations with the Teachworth woman would probably be uncovered. He merely attempted to *save himself* and his family *from the embarrassment that would ensue if the woman came back."* (Italics mine.) And said counsel says: "He had a perfect right to do that."

Well, true it is that "embarrassment ensued to appellant" by the "coming back" of this Teachworth woman. But I am of the opinion that this unusual activity (for surely the hurried drive some 480 miles into Arkansas for the purpose of a very brief interview, at 2 o'clock in the morning, with this woman, can be rightfully denominated "unusual" activity) on the part of appellant in undertaking to reach Miss Teachworth, and his anxiety to have her silenced as a witness (as to the circumstances of the shooting of his wife, as the jury could fairly infer), "was of itself *some* evidence tending to prove a consciousness of guilt, *and tended to connect defendant [appellant] with the commission of the crime."* (Italics mine.) Crumbley v. State, 26 Ala.App. 24, 152 So. 55, 56; certiorari denied by our Supreme Court, 228 Ala. 45, 152 So. 57. "The probative force of this evidence was for the jury." Id.

Granted that the story told by Joe Percy Bragg was "weird, unnatural and is not easily understandable," yet so was the crime; and so was the prompt nocturnal visit paid by appellant, for the purpose stated, to his possibly motivating paramour in a far distant city.

The issues, in my opinion, were properly left to the jury.

I therefore respectfully dissent from the order overruling the state's application for rehearing.

### After Remandment.

#### SAMFORD, Judge.

On the original submission this case was reversed by this court for the error there pointed out, in which we held that the testimony of the witness, Joe Percy Bragg, was not sufficiently corroborated to authorize its submission to the jury, and that, therefore, the defendant was entitled to the affirmative charge. On certiorari to the Supreme Court, it was held that this court was in error in that particular, and the cause was remanded for further consideration. It now becomes necessary for us to consider other questions presented in the record.

On the trial the defendant requested the court in writing to give charge 24, as follows: "The Court charges the jury that if you have a reasonable doubt as to the truth of the testimony of the witness, Joe Percy Bragg, then this defendant cannot be convicted." Other charges, notably charges 18, 27, 37, and 43, embodying the same principle, were requested by the defendant and marked refused. As we see it, it will not be necessary to pass on these charges separately, as the charge above quoted states the principle as clearly as it could be stated applicable to the case at bar.

The evidence for the state consisted of the testimony of the witness, Joe Percy

Bragg, and other testimony tending solely to such corroboration of the testimony of the witness, Bragg, as would authorize the jury to consider his testimony in making up its verdict. Without the testimony of the witness, Bragg, there was no testimony in the case which would have authorized a conviction, and therefore the one question presented and the contention of the parties in the court below was as to the truthfulness of this evidence which alone connected this defendant with the crime charged. Joe Percy Bragg was the self-confessed principal in the commission of a foul crime committed at midnight under such circumstances as in themselves would call for the closest scrutiny, and, while it has now been held by the Supreme Court that there was some slight corroboration of his statement sufficient to allow its consideration by the jury, his testimony was otherwise seriously impeached by statements out of court different to that made by him on the trial. There was no other witness in the case who testified to any fact or facts which would warrant the conviction of this defendant of the crime with which he is charged, and it is admittedly a fact that without the testimony of Bragg this defendant cannot be convicted. So that, the real point of contention on the trial of this case was as to whether the testimony of Bragg could be believed beyond a reasonable doubt. ·

■ In a criminal case a prima facie case of guilt does not generally rebut the presumption of innocence or shift the burden of proof, and until the state proves in the first instance beyond a reasonable doubt the facts which constitute the offense, the accused is not required to establish his innocence by exculpatory evidence. Such is the expression of the general rule as laid down by Clopton, Judge, in the case of Segars v. State, 86 Ala. 59, 5 So. 558. Such is a succinct statement of the age old rule applicable in prosecutions of persons charged with the commission of crime.

Following that principle the charge above set out, or similar charges embodying the same principles, have been the subject of many decisions of this court and of the Supreme Court.

In Washington et al. v. State, 58 Ala. 355, Stone, Judge, in commenting upon a charge which reads, "such corroborating testimony, in order to avail anything, must be of a fact tending to show the guilt of defendants," said, "the charge should have contained a clause, somewhat to this effect: 'If the question of guilt of the accused depends on the testimony of this witness; or, to this effect: A reasonable doubt in the minds of the jury of the truth of this witness' testimony." Following this case, the Supreme Court in McDaniels v. State, 162 Ala. 25, 50 So. 324, applied this rule to the testimony of a corroborating witness where the corroboration of an accomplice depended solely upon the testimony of one witness. In Segars v. State, 86 Ala. 59, 5 So. 558, it is held "the jury are not authorized to find the defendant guilty on the evidence of a single witness, upon whose testimony the question of guilt depends, if they have a reasonable doubt of the truth of his statements."

In Baxley's Case, 18 Ala.App. 277, 90 So. 434, certiorari denied 206 Ala. 698, 90 So. 925, this court noted some decisions in which the charge here under consideration was held to be misleading in view of the fact that the conviction of the defendant did not depend upon the testimony of one witness, in which connection was cited Price's Case, 10 Ala.App. 67, 65 So. 308, Conner's Case, 10 Ala.App. 206, 65 So. 309, McConnell v. Adair, 147 Ala. 599, 41 So. 419. As was pointed out in the Baxley Case, supra, there were several witnesses for the state who testified as to the facts of the killing and several witnesses for the defendant who testified as to the details of the homicide. It was there said that the jury might have disbelieved the exculpatory testimony of defendant's witnesses, but, if they disbelieved the testimony of defendant's witnesses tending to establish self-defense, they could and should have found the defendant guilty. Upon that state of the evidence, the charge was held to be misleading. Since the Baxley Case, the question has been before this court several times, notably in the case of Gilbert v. State, 20 Ala.App. 565, 104 So. 45, where it was said, "as stated hereinabove, there can be no controversy that the conviction of this defendant rested solely upon the testimony of said state witness Dave Upton, and that in the absence of his testimony the duty would have rested upon the court to direct a verdict in favor of defendant, and to order his discharge. This being true, refused charge 3 was in point and should have been given." To the same effect is the decision in Clayton v. State, 23 Ala.App. 150, 123 So. 250.

430

■ The charge here under consideration does not come within the influence of the cases of Koch v. State, 115 Ala. 99, 22 So. 471, Boozer v. Jones, 169 Ala. 481, 53 So. 1018, and Love v. State, 218 Ala. 66, 117 So. 400. In those cases, the facts and the charges are entirely different; there, there were other witnesses to the details of the crime; here, the conviction of the defendant depends solely and alone upon the testimony of the witness, Bragg, and if the jury did not believe his testimony beyond a reasonable doubt, he could not be convicted, and the defendant was entitled to have the jury so instructed.

■ The defendant requested the court to give the following charge, which was in writing: "The court charges the jury that the letters written to the Teachworth woman by the defendant, in evidence, and the pictures offered in evidence are wholly insufficient, standing alone, to authorize an inference that the defendant employed the negro Percy Bragg to shoot or kill the defendant's wife." It is insisted that this was a charge on the legal effect of the letters written by the defendant to the Teachworth woman, and that under section 9509 of the Code of 1923 he was entitled to have this charge given. The charge, however, is abstract. The evidence does not stand alone. It was introduced generally for the consideration of the jury in connection with all the other evidence in the case, and for this reason, if for no other, the charge was properly refused.

■ After the police officers testified to finding the defendant's pistol lying on the bed in a holster on the night the crime was committed when they went there to investigate the case, the state offered in evidence the pistol identified as that of the defendant. The officers then testified to recovering the bullets that wounded Mrs. Slayton from the bed where Mrs. Slayton was lying at the time she was shot. The officers testified they got one bullet out of the pillow and one out of the mattress, and that they turned those bullets over to Mr. Jack Stewart, an expert on ballistics; that they also turned the pistol over to him. Whereupon, the defendant propounded the following question to the witness: "Did Mr. Stewart give it as his opinion that these bullets were fired from defendant's revolver?" The state objected to this question, objection was sustained, and the defendant reserved an exception. The

court was not in error in this ruling. The testimony called for was clearly hearsay.

■ When Joe Watts was being examined as a witness, the state, over objection and exceptions by the defendant, was permitted to go into detailed inquiry regarding the sending of a telegram by the said Joe Watts to the accomplice, addressed to him in care of Mr. McHugh, in Decatur, Ala., on Wednesday before the alleged crime charged in this indictment was committed. This inquiry entered into the details of the sending of this telegram, where it was sent from, to whom it was sent, how it was addressed, who told him to send it, who gave him the money to prepay for the sending, when the money was given to him, and, finally, the telegram itself was introduced in evidence. All of which was over the earnest insistences, objections, and exceptions of the defendant; and it is nowhere apparent in the evidence that the defendant was even remotely connected with the sending or receiving of the telegram. All of this testimony was clearly irrelevant and immaterial to any issue in the case, and did not tend in the remotest degree to connect this defendant with the commission of the crime, nor did it tend to corroborate the witness Joe Percy Bragg on any material fact in the case. The admission of this testimony was therefore error, and the only question presented to us here is: Was it such error as entitles the defendant to a reversal?

■ We have held time and time again that the introduction of immaterial evidence is not error to a reversal unless it appears that the error was injurious or prejudicial to the substantial rights of the defendant. This we have done, construing and applying rule 45 of the Supreme Court, and such would be the ruling here but for the fact that the persistent inquiry pursued by the state with reference to the sending of the telegram emphasized the importance of such testimony by the court, thereby injecting into the case an immaterial issue which may or may not have influenced the jury in the final determination of the question of guilt or innocence in a case such as the one at bar.

■ The mere fact that the court refuses on objection to exclude testimony delivered before them is evidence to the jury that such testimony is of some importance and tends to prove the guilt of the

accused whether such is the actual case or not. De Phue v. State, 44 Ala. 32. It is held in Diggs v. State, 49 Ala. 311, that the admission of irrelevant evidence is an error which will work a reversal of the judgment unless the record clearly shows that no injury could possibly have resulted. And in Jackson v. State, 52 Ala. 305, it is held that where illegal evidence has been admitted a reversal must follow unless the court can clearly see that the illegal evidence could not have prejudiced defendant, and this although the appellate court may not be able to' see that injury resulted from the error. Williams v. State, 83 Ala. 16, 3 So. 616. To the same effect are Ridgell v. State, 1 Ala.App. 94, 55 So. 327; Phillips v. State, 3 Ala.App. 218, 57 So. 1033; Watson v. State, 8 Ala.App. 414, 62 So. 997; Powe v. State, 19 Ala.App. 215, 96 So. 370, 371. In the latter case it is said, "where error is shown to have been committed by a trial court, injury is presumed, and the burden and obligation to subsequently remove and to wholly neutralize the prejudicial effect wrought by the admission, over the adversary's seasonable objection and exception of such illegal matter, is upon the party inducing the admission of such illegal matter as evidence in the cause." Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann.Cas.1916E, 565; Davis v. State, 18 Ala.App. 482, 93 So. 269; Booker v. State, 23 Ala.App. 78, 121 So. 3; Halford v. State, 24 Ala.App. 540, 137 So. 679.

 Such was the law prior to the adoption of Supreme Court Rule 45 which now places the burden on the appellant of showing error probably injuriously effecting his substantial rights.

 Insistence is made that the court committed reversible error in permitting the solicitor in the cross-examination of the defendant, when he was being examined as a witness, to ask him certain questions as to his meaning and' motive in writing certain things in the letters which defendant had written to the Teachworth woman. It has long been the law that the undisclosed motive or intent with which an act is done or refused to be done cannot be testified to by a witness on direct examination, but, under the broad discretion given to trial courts, the cross-examination of a witness takes a very broad scope, and, unless it appears that this discretion has been abused, the trial court will not be held in error for permitting it.

For the errors above pointed out, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

RICE, J., dissents.

On Rehearing.

SAMFORD, Judge.

The application for rehearing is overruled.

Application overruled.

RICE, Judge (dissenting).

The judgment of conviction in this case is *now* reversed by my associates upon two grounds: First, the refusal by the trial court to give at appellant's request written charge No. 24; and, second, the admission in evidence over appellant's objection, of the testimony of Joe Watts—identified (by error, I assume), in the record before us, as a witness "on behalf of the defendant"—as to a telegram he (Watts) claimed he sent to Joe Percy Bragg.

As to the first ground of reversal I am impressed that the charge, as drawn, was at least confusing to the jury—and hence, for that reason, properly refused. It seems to me that the charge, quoted in full in the majority opinion (after remandment), would forbid a conviction of appellant if the jury had a "reasonable doubt as to the truth of the testimony of the witness Joe Percy Bragg" as to any, the most immaterial, detail of the occurrences narrated by him. And this while the jury may have had *no* reasonable doubt as to the truth of the testimony of the witness as to the material matters contained in his testimony. This, I think, is not the law.

But aside from the above I am convinced that no harm was worked to appellant by the refusal of the charge in question. The trial court gave at appellant's request the following written charges, to wit:

"8. The court charges the jury that if the jury, after considering all the evidence, has a reasonable doubt about the defendant's guilt, arising from any part of the evidence or arising from the lack of evidence, then you should find him not guilty."

"11. The court charges the jury that if the evidence, or any part thereof, after a consideration of the whole evidence, generates a well founded doubt of the defendant's guilt, the jury must acquit him.

"12. The court charges the jury that if the evidence is not so convincing as to lead the minds of the jury to a conclusion that the defendant is guilty, they must find him not guilty.

"13. The court charges the jury that unless each of them is convinced beyond a reasonable doubt of the guilt of the defendant from the evidence in the case, then they should not convict him.

"14. The court charges the jury that the defendant cannot be convicted in this case unless each and every member of this jury is not only satisfied from the evidence of the defendant's guilt, but is satisfied from the evidence, and the evidence alone, beyond all reasonable doubt and to a moral certainty, of his guilt.

"15. The court charges the jury that if after looking at all the evidence in this case and considering it fully, your minds are left in such a state of uncertainty that you cannot say beyond a reasonable doubt that the defendant is guilty of the offense charged, then this is such a doubt as would entitle defendant to an acquittal and you should so find."

"17. The court charges the jury that a reasonable doubt may arise, though there is no probability of the defendant's innocence from the testimony, and if the jury has not an abiding conviction to a moral certainty of his guilt, then they should find him not guilty."

"19. The court charges the jury that in weighing the evidence, each piece and all the evidence should be weighed with all the other evidence and you should make up your verdict from a due consideration of the whole evidence. If the jury, after considering all the evidence, has a reasonable doubt of defendant's guilt, arising out of any part of the evidence, they should find him not guilty."

"30. The court charges the jury that as fair-minded and honest men the law enjoins upon you the imperative duty of giving the defendant the benefit of every reasonable doubt arising from the evidence, before you can find him guilty."

"38. The court charges the jury that if they do not believe the evidence of the witness Joe Percy Bragg, and if they further find that there is no other evidence in the case connecting the defendant with the crime charged, then the defendant cannot be convicted."

"42. The court charges the jury that if you believe from the evidence in this case that the witness Joe Percy Bragg has willfully and corruptly sworn falsely as to any material fact in this case, you may, in your discretion, disregard his entire testimony and give it no weight or credence whatever."

Beside *other* written charges of the same general import as those quoted, which the court gave, at appellant's request, the learned trial judge in his oral charge to the jury used this language, to wit:

"Now, gentlemen, this defendant, just as every other defendant who comes into court charged with a criminal offense, is presumed by law to be innocent, and that presumption of innocence attends him, as a matter of evidence, during the course and progress of the trial, until such time when the jury is convinced beyond a reasonable doubt of his guilt. * * *

"Likewise, gentlemen, in this case, as in all other criminal cases, the burden of proof is on the state, and that burden of proof is to produce evidence to the jury which convinces you beyond a reasonable doubt of the defendant's guilt. * * *

"If after considering all the evidence in the case you have a reasonable doubt growing out of any part of the evidence, after you have considered that part along with all the other evidence in the case, and you have that reasonable doubt, then the law says it is your duty to give the defendant the benefit of that reasonable doubt and in that event it would be your duty to find him not guilty."

Under these circumstances, it seems to me the written charge 24 may well have been refused as having been already covered (in legal principle and effect) by charges—oral or written—given to the jury. Code 1923, § 9509.

If indeed it is true (which I do not deny), as asserted by my associates, that, "Without the testimony of the witness, Bragg (Joe Percy Bragg), there was no testimony in the case which would have authorized a conviction and therefore *the one question presented* and the contention of the parties in the court below *was as to the truthfulness of this evidence* which *alone* connected this defendant with the crime charged" (italics mine), then how, in the name of justice, could the jury ever become convinced "beyond a reasonable doubt of the guilt of appellant," so long as they had a "reasonable doubt of the truth of the testimony of Joe Percy Bragg" (as to

the *material* circumstances of the case)? It just seems to me but a useless superfluity for the trial judge to have given this written charge 24. So much for that.

Now as for the admission of the testimony with reference to the telegram, it plainly appears that this testimony was brought into the case by the *appellant,* on his cross-examination of the witness Joe Percy Bragg. Surely the judgment of conviction should not be reversed because the state was. *then* allowed to develop, fully, the circumstances surrounding the sending and receipt of the telegram. And this, even though it be conceded that *all* the testimony in this regard was immaterial. Murphy v. State, 14 Ala. App. 78, 71 So. 967, and cases cited in the opinion in said case.

Of course, I apprehend it would be but a "wail in the dark" for me to assert, as I do, that it is clear to me that the admission of this testimony in no way worked any injury to appellant. If, as a fact, or as law, it was error to admit it, our Supreme Court, under its consistent rulings, would not review the opinion of a *majority* of this court that its admission was *prejudicial* to appellant. So much for that.

I am persuaded the judgment of conviction in this case should be, as for any prejudicial error having been committed in its trial below, affirmed.

And I yet dissent.

### On Second Remandment.

SAMFORD, Judge.

We are still of the opinion that the testimony of Joe Watts as set out in the opinion on first remandment is illegal, irrelevant, and not coming within the rule as laid down in 16th Corpus Juris, 701, and sustained by many cited authorities. To wit: "The corroborative evidence must be independent of the testimony of the accomplice; but subject to this limitation, any evidence which legitimately tends to establish the guilt of defendant is admissible to corroborate the accomplice, and sufficient to satisfy the statutory requirement of corroboration. Evidence which does not relate to points material to the conviction or to circumstances with which defendant is in some way connected or which affect his identity is not admissible, even though a basis, other than the mere fact of accomplicity, has been laid for the impeachment of the witness."

█ However, while such testimony may have had its influence on the jury, an

examination of the entire record fails to convince us that such error probably injuriously affected the substantial rights of the defendant, so as to entitle him to a reversal of this cause.

█ We still hold that charges, 24, 18, 27, 37, and 43 assert correct propositions of law. But these charges could only have referred to the testimony of Joe Percy Bragg, and the same principles of law are substantially covered in charges 38 and 42 as requested in writing by the defendant and the general charge emphasizing the burden of proof as given by the court in its oral charge.

Therefore, on authority of Slayton v. State, 234 Ala. 9, 173 So. 645, the judgment in this case is. affirmed.

Affirmed.